Jones, Chancellor,
delivered the opinion of the court. The defendants in error in this cause, claiming to be entitled each to one ninth part of a "farm in the "town of Schodack, in Rensselaer county,, presented their petition to the "Supreme court, at the August term of that court, in the year 1823, under the act of, 12th of April, 1813, for the partition of land's, stating that each of them was seised -in fee of the ninth part of the premises as tenants in common, and that Clapp, the plaintiff in error, 'was tenant uncommon, as purchaser, from one Peter Bromagham, of the ninth part thereof; and that the owners of the residue were unknown to them, the petitioners ,; *and praying that commissioners might be appointed according to law, to make partition thereof. Clapp, the plaintiff in error, pleaded in bar to the demand of the "petitioners for partition erf the said premises, sole seisin of the same in fee in himself, at the time of preferring the petition, and at all times after-wards, with a traverse of the alleged seisin of the petitioners or either of them, as tenants in common thereof; and to this plea subjoined a notice of his intention to give in evidence, at the trial, that the "petitioners never Were seised of the premises, but that, on the contrary, he at the *574 time of exhibiting the petition, was, and still continued the sole owner thereof, and seised in his demesne of the same as of fee, and had been so seised for 25 years previously to the exhibiting of the petition, adversely to the claims of the petitioners, and of all persons whatever.
The petitioners, in their replication, protesting that the defendant below was not solely seised and possessed as by him alleged in his plea, take issue upon the traverse, and say, that they, the petitioners, are seised of the premises as tenants in common, in manner and form as alleged by them in their petition. Upon this issue the parties went to trial, and the bill of exceptions taken at the trial, presents the facts which give rise to the questions now before the court.
It appears, from the testimony disclosed by the record, that William Bromagham, deceased, the father of the petitioners, was, in his lifetime, seised of the premises in fee, subject to an annual rent reserved by the deed of conveyance, and made payable to the grantor and his heirs and assigns for ever; that William Bromagham, about four years before his death, became a lunatic; and that his sons Peter and Isaac, by the common consent of the family, took the charge, possession and management of his farm; that Peter was, on application to the court of chancery, appointed the committee of the person and estate of the lunatic; that Peter, shortly before, or after his appointment as committee, purchased the share and interest of Isaac in the premises ; that William Bromagham, the lunatic, died January 15th, 1799, leaving nine children, among whom were the petitioners, and Peter and Isaac Bromagham; that Peter, the committee of the lunatic, *had the sole possession of the whole of the premises at the time of the death of the lunatic, and claimed to'be the absolute and exclusive owner of the same ; that he continued to hold the same as his own, adversely to all other persons, until the 29th of November, 1802, when he contracted for the bargain and sale of the same to John Clapp, the plaintiff in error, for £1000, and agreed to deliver the possession of the farm to Clapp, on or before the first day of May then next; that the possession *575 of the farm was delivered prior to the first of May, 1803, to Clapp; that the premises had been conveyed to him, and the consideration money fully paid by him, and that ever since he first entered into the possession thereof, he has held, possessed, and enjoyed the same, as the sole, absolute and exclusive owner thereof, and paid the rents therefore without any interruption or claim, until the petition and notice for the partition thereof by the petitioners were served upon him on the 10th of May, 1823.
These are the prominent facts of the case. The judge was of opinion that the petitioners had maintained the issue on their part, and were entitled to the three-ninths of the premises claimed by them as tenants in common with Clapp and the other unknown owners; and so charged the jury, who found a verdict accordingly; and the supreme court have confirmed the opinion expressed by the judge at the trial, and given judgment on the verdict.
The questions for the consideration of this court, then, are, what the issue between the parties was? How far that issue was sustained by the petitioners ? What points of law were involved in it, and how they were settled by the supreme court, and whether the decision of them was correct or not ?
The issue was upon the seisin and possession of the re r petitioners. The petition alleged that each petitioner was seised of one equal undivided ninth part of the premises, as tenant in common in fee. The defendant’s plea is, sole seisin in himself, with a traverse of the alleged seisin of the petitioners; and the petitioners take issue on the traverse, reiterating the allegations of the petition ; that they were seised of the premises as tenants in common, in manner and from as *alleged in their petition. It was incumbent, then, upon the petitioners, on this issue, to prove that they were seised as tenants in common of the shares of the premises claimed by them, at the time of presenting the petition. [1] The evidence on their part went to show that the ancestor was the proprietor of the *576 farm, and died seised of it, leaving nine children Ms heirs law, and they were three of those children and heirs-; and supposing them to have established those facts-, did proof show them to be seised, at the time of presenting the petition, of the three ninth parts of the premises claimed by them ? If they had gone one step farther, and shown an entry by them upon the farm so descended to the heirs, and a continuance of their possession actual or constructive, to the time of suing for a partition of it, they would have proved the affirmative of the issue taken by them, and have established a, prima facie right to partition, wMch unless repelled by the proof, must have prevailed. But no entry or possession is shown by them; and the testimony decisively proves, as the supreme court concede, that the defendant’s possession was adverse to them from ^le 3<^ ®a7> 1803, when he was in possession, claiming title under a conveyance to him of the whole. I attach no importance to the objection, that he claimed under the agreement only for the purchase of the farm, and did not produce a deed. Indeed, little stress was laid upon it in argument. The title was equally adverse to the petitioner^ -Aether ft was held under the agreement or the deed of Peter, claiming to convey or to contract for the coiiveyanee of the entire farm. [1] Then could the petitioners he seised of premises which were held adversely to them? The fact of adverse possession was, I am aware, denied on the argument; and the verdict was insisted upon as decisive against it, and. as settling the point in favor of the ... “ • petitioners. But the record shows that the verdict was taken by consent, subject to the opinion of the court on a case agreed upon by the parties '; and that the case was afterwards turned into a bill of exceptions. The bill of exceptions is before this court, and discloses to us the evidence which was before the jury, and the opinion expressed to them upon it by the judge. It appears that the verdict was given *under the -charge and opinion of the court, which must be taken to have had an influence upon *577 it; and that charge is now before this court, upon an exception to it as erroneous, for relief against the erroneous finding it is alleged to have induced.
It is not the finding of the jury, but the opinion and charge of the judge which induced that finding, that are brought before us for review; and we are not to look to the formal Verdict on the record, but to the evidence returned to us in the bill of exceptions, for the matters that bear upon the points on which we are to adjudicate. Now, the bill of exceptions clearly shows, that the fact of the sole and exclusive possession of the farm, by Clapp, the defendant below, as the absolute owner of it, claiming the title adversely to the petitioners for more than 20 years without interruption, claim or disturbance from them, was fully proved; and it was assumed, and in terms, conceded by the court below, on their decision of the cause. That fact, therefore, not having been drawn in question, cannot be intended to have been passed upon by the jury. It was the legal effect of that fact upon this case, that was the point in dispute between the parties ; and that legal effect was a question of law. In ordinary cases between strangers, litigating in possessory actions, such a possession would be a conclusive defence in law against the claimant. If it was unavailing to this defendant in this form of action, the inefficacy of it must proceed • either from some relation between the parties as joint owners, or from the nature and form of the remedy by partition.
These parties, it is said, stood in the relation of tenants in common to each other ; and the possession ot one of them was, in judgment of law, the possession of all of them [1] and in support of the position, it is said, that the title of the defendant was derived from the same source with that claimed by the petitioners; and it was contended that the defendant entered under the title vested in Peter, as tenant in common with the petitioners; and that his possession could not be adverse to them, but enured to their benefit. *578 But, is it trae that the defendant’s entry was as tenant in common? There is no colour for the suggestion. On the contrary, the bill of *exceptions clearly shows that he entered as purchaser of the whole, and held as tenant in severalty, claiming to be the sole and exclusive owner; his title was, from its commencement, adverse to the petitioners ; he never held in common with them, nor acknow ledged any right in them or any of the heirs of William Bromagham, the ancestor; he purchased of Peter as being the sole proprietor, and who at the time claimed to be, and was supposed to be the exclusive and absolute owner of the farm; and he has from that time to the commencement of this suit, continually claimed and held the premises in exclusion of all others, and has had the sole seisin. How could that seisin and possession enure to the benefit of the petitioners ? It is conceded that a disseisin by one tenant in common will sever the joint possession, and turn the title of the co-tenants to a right; but it is contended that no exclusive possession, short of an actual disseisin, will have that operation [1] and that no such disseisin has been shown by this defendant. It has been said in modern times that the characteristic properties of disseisin, as it was understood in ancient times; has been lost, or become by disuse so obscure as not to be now discernible ; and it is probable that some of the nice distinctions which once prevailed may not, at this day be perfectly understood. Indeed, it is possible that some shades in the definitions of the disseisin by election may be lost to us. Nor is the character of disseisin in fact entirely free from difficulties; but these arise more from the changes it has undergone, than from any intricacy in the legal sense of it in its origin. The history of the English system of jurisprudence abun dantly shows that the meaning attached to the term has varied with the state of society, and the rules applicable to the enjoyment of real estates ; and much subtlety and some confusion was introduced into its doctrines for the purposes of the remedies which were engrafted upon it. But it was *579 iti every stage of it, in substance, the act of divesting the owner of his seisin and possession of the land, and substituting in its place the ownership and possession of the .disseisor. In its origin, when the seisin -constituted the title of the owner to his freehold, it was the forcible expulsion of the tenant, or the wrongful entry upon him, *and the forcible holding by the intruder, which was called a disseisin; and in those days, force would naturally be employed to effect a change of possession by a wrong v , . ° , _ doer. [ 1 ] But in after times, when the titles to land became more complex, and possessions more diversified, other acts were held to be disseisins. It would be as preposterous to look for the same acts of desseisin in our day that usually occurred in the simple times of high antiquity, as to expect to find the same customs and manners in this age that were the characteristics of those. The wrong doer does not, in our times, forcibly, and without the claim of right, expel his neighbor from the tenements he coverts, nor hold the owner out with a strong hand of power; yet if he silently enters upon the possession of a stranger, and either under pretence of right which he knows to be groundless, or without colour of title, usurps and claims it _ as’his own, keeps-out and sets at defiance the former possessor and all others, and holds exclusively, claiming the fee, who will deny him to be a disseisor? The act partakes too largely of all the properties of the ancient disseisin to be distinguished from it. The owner is divested against his will of his seisin and possession, and that seisin Is usurped by another who wrongfully holds it as his own. In modern times, an ouster by any means short of actual force,' is generally identified with adverse possession, which is understood to embrace every possession held by the possessor in exclusion of others. But an ouster effected without the employment of force, often is, in effect and all practical purposes, a disseisin; and in the case now under consideration, the exclusive possession and holding of Peter, under a claim of title to the whole farm, and accompanied with acts of ownership co-extensive with the claim, if *580 wrongful against the petitioners, was a disseisin of them, or rather it was technically a deforcement, which is of the same family with a disseisin, and, as regards 'the point in qUestion in this cause, has the same properties. If, as is contended, the estate descended on the death of the lunatic to his nine children, they took it under our statute of descents, (1 R. L. 52, s. 3,) in coparcenary, in the same manner as if they were all" daughters of the deceased father. *Peter was in possession, at the time of his father’s death, and set up a claim to the whole estate, not by descent as heir to his father, but as- purchaser or otherwise against the descent, and.it is at least questionable whether his entry, disclaiming all title by descent, and insisting upon a distinct title, could accrue to the benefit 0f the other coparceners. But, if it did, his subsequent r - . , . I1 . acts and avowed claim to the whole, and entire exclusion of the coparceners from all participation in the use of it, or the rents and profits of it, and his sale to Clapp, with the entry and sole possession of Clapp as owner, were the highest and most unequivocal acts of disseisin, or at any rate, of adverse possession, that could possibly be done. [1] Peter, in the first instance, and Clapp afterwards entered for himself, exclusively claiming the whole ; and the sale by Peter to Clapp was perfectly, decisive of the character of his entry, and the exclusive nature of his possession. If Peter was a co-partner with his brothers and sisters, he usurped the whole and"held out all his companions. The other children of the lunatic never had any possession of . ■ . . the premises subsequently to the death of the father, unless t^ie possession of Peter enured for their benefit. But, if he was a deforciant, his possession was adversary to1 them, „ . . ..... and if there was anything equivocal m that possession, or ^¡g oriqinal entry and possession as committee of the ° j x luiiatic could qualify it, his. sale of the whole to Clapp, and Q¡appig entry an¿ possession, were clearly adverse.
Lord Mansfield in the case of Doe v. Prosser, (Cowper, *581 129,) held that a man may come in by a rightful possession, and yet hold over adversely without a title. He gave for examples, a tenant per auter vie, holding over for 20 years after the death of cestui que vie, which he says, would be a bar to the remainderman or reversioner in ejectment; (a) and he gave also the case of tenants in common, observing as to them, that the possession of one tenant in common, eo nomine, as tenant in common, can never bar his companion, because his possession is not adverse to the right, but in support of the title. But, that, if he denies the title of his companion, claiming the whole, will not pay his companion his *share, and continue in possession, such possession is adverse and ouster enough ; and that actual hindrance is not necessary. And Ld. Kenyon in Peaceable v. Read, (1 East, 568,) gave his sanction to the doctrine. So it has been held that an entry and sole occupation of the whole, keeping the co-tenants out, gives the possession the character of a disseisin or an adverse possession, (5 Burr. 2604. 1 Atk. 493. 2 id. 632.)
Anciently the rule, was, that an actual ouster or forcible dispossession of the co-tenant was necessary to constitute a disseisin. That rule was afterwards relaxed, and the exclusive receipt of the profits by one, withholding from his companion all participation in them, or an actual hindrance of the companion from entering or sharing the possession, was adjudged to be sufficient evidence of an adverse holding. And afterwards it was held, in Doe v. Reid, (11 East, 51,) that one tenant in common in possession, claiming the whole and denying possession to the .other, is evidence of an ouster; and that it is not indispensably necessary to make the possession adverse, that there be a receipt of the rents, and an actual hindrance of the co-tenant from entering. Nor has this rule been recently introduced. It obtained in England long prior to the separation of this country from that. It is laid down in Viner’s Abridgment, that although the entry of one tenant ir. common is the entry of both, yet, if one enter, claiming *582 the whole, this will be an entry adverse to his companion, (14 Viner, 512, pl. 5;) and the editor notes in the margin, that the possession of one heir in gavelkind, claiming the whole,‘is adverse.
In 2 Atkeyns, 632, Ld. Hardwicke ruled that a fine and non-claim by a tenant in common will bar his companion, if he does not call the party to an account for the profits ; for this, he observes, has always been admitted to be evidence of an ouster.
The supreme court of the United States, in Ricard v. Williams, (7 Wheaton 60,) take the true distinction. There is no doubt, they say, that in general, the entry oi one heir will enure to the benefit of all; and that, if the entry is made *as heir, and without claim of an exclusive title, it will, be deemed an entry, not adverse to, but in consonance with the rights of the other heirs ; but it is as clear that one heir may disseise his co-heirs, and hold an adverse possession against them as well as a stranger ; and that notwithstanding an entry as heir, he may afterwards, by disseisin of his co-heirs, acquire an exclusive possession on which the statute will run. They admit that an ouster or disseisin is not to be presumed from the mere fact of sole possession; but they say, that it may be proved by such possession, accompanied with a notorious claim of an exclusive right. In that case, the entry was made by an heir under an exclusive claim to the whole, not by descent; hut by the title distinct or paramount; and -it was held that there was no incapacity in the heir to claim an estate by title distinct or paramount to that of his ancestor ; and if his possession is exclusive under such claim, and he holds all other persons out until the statute period has run, he is entitled to the full benefit and protection of the bar. (b) . [1]
These principles appear to me to apply to this case, and to govern it. Here was an entry by Peter, claiming the whole ; he was in possession claiming the entire estate; *583 he denied possession to his brothers and sisters ; he sold the farm to a stranger ; received the full value of the land, and delivered over the possession to the purchaser, who has ever since held and used it as his own; and if Peter or his vendee had the power to make a disseisin or an adverse possession, this possession must ’ be held to be adverse. In this case, there was more than the mere fact of sole possession. It was accompanied with a notorious claim of exclusive right. The possession was exclusive under that claim, and all other persons were held out until 20 years, the statute limitation to the right of entry, had run. [1]
The deed of conveyance from Peter Bromagham to Clapp was not produced; but the agreement was sufficient to show that the entry and possession were under a claim of title ; and the confidence of Clapp in the validity of that title is' conclusively shown by the consideration he paid for the land.
*It is settled by the decisions of this court, that it is enough that the possessor be in under a claim of title to clothe it with the character of an adverse holding, and to give it efficacy as a defence, when of sufficient age to be a bar ; and that an invalid or defective title, if believed to be good, [2] will be equally operative with a valid one in giving effect to a possession taken and held under it. (La Frombois v. Jackson, 8 Cowen,589.) If, therefore, Peter, or his vendee, erred in supposing that he had acquired a good title to the farm, still the exclusive possession of it, claiming an exclusive right to it under that title, however defective or invalid it may have been, was sufficient after the lapse of twenty years, to bar the entry of the petitioners, and to put them to their writ of right.
Conceding, then, for the sake of the argument, that Peter had no title to the shares of the farm now claimed by the petitioners, but held them by wrong; still, if his possession was a desseisin or deforcement, Clapp is entitled to the *584 protection which the law confers on the alienee of a dissezsor or deforciant; and if the previous acts and posses* sions'of Peter were not, in judgment of law, an ouster of his c0„tenantg . yet pjg saje 0f the entire estate to Clapp the defendant below, and the absolute purchase of the premises by the defendant below for the full value of the whole interest, and his entry under the agreement for the purchase, as sole absolute and exclusive owner, and his subsequent claim of ownership, characterized his possession as adverse to the petitioners; • and in either case, their entry was tolled by his possession, and he was entitled to the protection of the statute bar against their claim. [1]
But, it was contended that the purchase and possession ^aPP were fraudulent; and if that objection to the title was well founded, it might be fatal; for fraud vitiates whatever it touches. [2] But there is no ground for the imputation. Clapp was a stranger to the family, until the time of the purchase, and resided at a distance from them, He made the purchase nearly three years after the ancestor’s death. Peter, the vendor, was in the actual and exclusive possession of the ^premises at the time, and claimed to be the absolute and exclusive owner. He was understood in the neighborhood to be so ; arid Clapp treated with him as such. He may have been incautious and indiscreet in completing the purchase without sufficient enquiry and due precautionary measures for his security; but that was imputable either to his negligence or to his confidence in the representation of Peter the vendor; and the consequence of a failure of title would have fallen upon himself alone. It is no proof of fraud; and shows no sufficient ground for any presumption injurious to his integrity. Purchasers are too apt to disregard the caution of the law, caveat emptor; and to rely upon the apparent ownership of the possessor and his assurances of his title, without instituting proper inquiries into its *585 validity. But it would be a most severe and alarming principle, to impute.fraud or notice of the defect or invalidity of the title to the .neglectful purchaser. The rule of law is otherwise. It does not charge the purchaser of real estate with notice of the title, nor affect him with any imputation of fraud in talcing a bad one. It holds want of notice or knowledge to be immaterial. The purchaser takes the title at his own risk; and if it proves defective, and the true' owner uses due diligence and interposes his claim in time, the purchaser must lose his estate. But eveii in that case, when the title is palpably defective, the party who has the right, must prefer his claim and prosesecute his suit within the time prescribed by law, or the possession of the purchaser under his defeasible title will cure the defect, and ripen his claim into a right.
The rules of law, therefore, relative to notice, or the sufficiency of disclosures to put the party on enquiry, are inapplicable. To affect the defendant with fraud, clear and positive proof was necessary. It ought to have been shown that he knew Peter’s title to be bad, and that the same belonged in fact to all the heirs of the ancestor; or that the petitioners were entitled to the shares they now claim to belong to them, and with such knowledge, colluded with Peter to defraud them. Not a trace of any such evidence appears. The only circumstance from which any knowledge, by Clapp, of the family, can be inferred, is, that he knew Isaac to be *the brother of Peter. But the knowledge of that fact, so far from leading to any doubt of Peter’s, ownership, seems to me strongly to confirm the truth of his representation; for Isaac stands by, and sees Peter contract for the sale of the whole farm, without objecting to the sale or intimating to the purchaser a doubt of Peter’s right to sell. Fairness required a disclosure of the adverse claim of the other members of the family, if any claims were made by them; and the purchaser had reason to conclude that Peter was, as he appeared and assumed to be, the real and sole owner of the farm. It appears that part of the purchase money remained unpaid *586 until 1805; and that Clapp, prior to that time, had become acquainted with William, another brother of Peter; and from these circumstances, and the total silence of the petitioners, and all the other children on the subject of their present claim, I infer, that they either had no well founded claim, or were conscious that, for some cause, good faith forbade them fo prefer it. The purchase was a matter of notori ety. Clapp removed from a distant county with his family, took possession of the farm, and openly exercised all the cus7 tomary acts of ownership over it, avowedly as the absolute purchaser, regularly paid the rents, and at different times discharged the purchase money. Was this the conductof afraudulent purchaser ? Was any imposition practised on the petitioners, any artifice made use of to deceive them, or any act done to mislead them ? All the circumstances attending the transaction concur in showing that they were not known by Clapp to have, any right or pretensions to the estate ; and the fact of the purchase of the farm at its full value, and the deliberate payment of the entire consideration by different instalments, is conclusive and convincing proof of his good faith, and of his full confidence in the title of' Peter, and entire ignorance of the claims of the petitioners." The actual payment of the full value for the purchase of a farm, with knowledge that the title was invalid, and that he might be at any moment evicted, would have been an act of weakness and folly, and not a proof of fraud or bad faith. But on the other hand, .the petitioners, or some of them, of those they represent, lived in the county of Rensselaer in the vicinity of the *premises, at the time of the sale to Clapp, stood by and saw him enter into possession, take the title from Peter, pay him the consideration, and exhaust his substance in improvements; and yet, for twenty years, they observe a total silence on the subject of their present pretensions, utter no complaint against the purchaser, and take no step to test his title or enforce their own claims. They surely come with an ill grace now into a court of justice, to revive a stale demand, and reap the fruits of the industry of an innocent purchaser, who *587 has been lulled into security by their silence and acquiescence ; and will, if they succeed, have devoted his life to their service.
Can these petitioners be heard to charge this purchaser with fraud, or be permitted to found any claim upon the presumption of his knowledge of their rights ? If they have established a title, and if this suit is the proper mode of availing themselves of it, and they are in season to assert their claim, the courts will enforce it. But the defendant below is entitled to all the protection this court can give to a bona fide purchaser for a valuable and full consideration ; and his defence is entitled to attention.
To return then to the issue between the parties. I concur in the opinion of the supreme court, that the possessory right, or the right of entry of all the petitioners, was barred by the lapse of time; upwards of 20 years’ possession having run against them all, and more than ten years having elapsed since the death of the husband of Jemima, who was under coverture when the disseisin or adverse possession commenced. Then did the petitioners prove the issue on their part, and show that they were seised of three-ninths of the premises as tenants in common with the defendant ?
Seisin imports possession; and when averred in pleading is predicated of the possession in fact of the premises. Thus, in writs of right, the demandant claims the right and inheritance, and avers his seisin in the past time, not the present ; alleging that he was seised within twenty-five years, and not that he is seised. So, in the writ of entry, a similar form is used in alleging the seisin ; and the reason is, that in both cases the plaintiff has been ousted of his possession, and cannot, *with truth, aver himself to be seised. But in partition, the plaintiff or petitioner must allege that he is seised, which imports a present possession as tenant in common or coparcener; and hence it is that non insimul tenent is the appropriate issue in partition, because the parties cannot hold together unless their possession as well as their titles, are in common. The fact of an adverse *588 holding by one against the other shows that they cannot hold together, and pro indiviso; for the party in possession holds the whole in exclusion of the others. A mere right of entry, if shown, will not satisfy the terms of the issue ; for there is no seisin in the party who is ousted. .
Now it is admitted, that the possession was held by Clapp adversely to the petitioners, at the time of presenting the petition. It follows, that, if adverse possession has the same operation and effect as a disseisin before a descent is cast" or the entry is tolled by lapse of time, the petitioners were not seised of any part of the premises, at that time, as tenants in common ; and they failed in the issue. The verdict of the jury therefore, ought, in such case, to have been against them and no judgment of partition given.
Coke,- in his commentary on Littleton, says, that if one coparcener disseise another, during the disseisin a writ of partition does not lie between them. The text of Littleton and the Year. Books sustain the position; and the reason given for it is, that they do not hold together and undivided. (Co. Lit. 167, b. 4 H. 7, fol. 9, b. 11, Ass. 23.) Yet the disseisee has a right of entry, and is entitled to his share of the estate when reduced to possession; and if it be a decisive objection to a partition, that one of the tenants in common is disseised by the other, on the ground that, during ..such disseisin, they do not hold • together,1 the same objection applies with equal force and upon the same reason, to ,the case of adverse possession ; for, in that case, as in disseisin, they do not, during the continuance of the adverse .possession, hold together. The law, as laid down by Coke, is recognised by Baron Comyn in his valuable Digest; and Viner in his Abridgment, treating of partition by coparceners, observes that the word tenet in a writ *always implies a tenant of the freehold; and therefore if one of them be disseised-by the other, no writ of partition lies. (16 Viner, 225, partition,) 1.
In the case of Bradshaw v. Callighan, in this court, (8 John. 558,) the rule was admitted, that if one coparcener is disseised by another, no writ of partition will lie; and the reason there given, is, that in England the word *589 tenet in a writ, always implies tenant of the freehold. It is settled, then, that a writ of partition would not lie at common law by a coparcener who was disseised by her companion ; and that a plea of sole seisin was good.
In this case, the petitioners never had a seisin of any part of the premises, unless they acquired it by the entry or possession of Peter ; for he had exclusively the possession at the death of his father; and if he held that possession for .himself solely, and kept out the rest of the heirs, he was a deforciant, and they had neither a seisin in fact nor in law of the undivided shares they claim. But if they ever could be regarded as constructively in possession by the entry of Peter, their coparcener, they were ousted by his subsequent acts and sale to Clapp; and from that period, at all events, the possession has been adverse; and they have had no seisin of the premises.
It was strenuously contended on the argument, that this adverse possession was a disseisin, and some of the later cases countenance the opinion, that an adverse possession is a disseisin. To many purposes, it may be so considered; and though there are points in which they differ, yet in the aspects under which we are now viewing them, they are" substantially the same, and produce the same effect upon the title. The disseisor, if he continue himself to occupy the premises, may at anytime before the right of entry is lost by lapse of time, be evicted by the disseisee; and so may the adverse possessor; and in such cases, where no descent is cast, the adverse possession, if suffered to run, will mature into right as soon as the disseisin. It is not material, therefore, for the purposes of this suit, to enter into a critical enquiry of the relative properties of disseisin and adverse possession, or to note the distinctions between them. It is well *settled that the adverse possession of one tenant in common or co-parcéner is an ouster of the co-tenants ; and that a continuance of it for twenty years as effectually tolls the entry as disseisin of the same duration, or a descent cast upon the heir of the disseisor. In this case there has been an adverse possession for more than twenty years. I am not now called upon, therefore, *590 to express an opinion of the effect of an adverse possession, for a shorter period; upon the question of seisin in an issue on the plea of non tenent insimul, or upon the suit of the party who is out of possession for a partition. I have already intimated my views to some extent on these points ; and shall press them no further.
But suppose the adverse possession to differ from the . ..... , disseisin m this; that until it toils the entry it will not distm’b seisin of the co-tenants, who are kept out by the usurper, nor obstruct the prosecution of a writ of partition, (which is the broadest, concession that can be asked for,) ^he right of entry in this case was tolled; qnd how then can it be contended that the seisin of the petitioners continued, or that partition could be demanded by them ? They were, in the language of the law, divested of all title to the land but the mere right; and were put to their writ uPon that right as their only remedy for the recovery of the part of the estate they claimed. It is clear, that the party who has lost both the possession and the right of p0ssessi0n, and has a mere right only, is not seised of the estate, either in fact or in law. How then could these petitioners sustain the averment of seisin 'in the petition, or the issue taken on the. traverse ? Why was not the proof of adverse possession for twenty years a decisive defence - and if so, how could the suit for partition be maintained before they had regained the seisin and posses- . r ■ SlOn 01 tilB IcVnd. .
But this was a proceeding under the statute of this state for the partition of land, and not a Writ of partition at common law; and it was assumed in argument, that the jurisdiction of courts of law, on petition for partition, has been extended by the act to cases of the mere right, equally with those of the seisin and possession of the petitioners.' A brief *view of the provisions of the act will be necessary to test the accuracy of this position.
The act (1 R. L. 507,) provides, that where any lands, tenements or hereditaments, shall be held in joint tenancy, tenancy in common, or coparcenary, it shall be lawful for any one or more of the parties interested therein, to pre *591 sent a petition to the supreme court, or mayor’s court, or court of common pleas of the city or county in which the lands are situated, setting forth the rights and titles of the parties therein, and praying that the same may be divided by commissioners to be appointed by the court. A rule is to be entered on proof of service of the petition, that the parties defendants appear and answer the petition; and the defendants may appear and answer within such time as the court may allow them for that purpose ; and such further pleadings may be had thereupon between the parties, according to the rules and practice of the court, as in other actions and suits depending therein, until an issue or issues in law or in fact shall be joined between the parties, or some of them; and it is specially provided, that such of the parties as shall answer the petition, may plead thereto non tenent insimul, and give any special matter m evidence, under that plea, which might be otherwise pleaded; giving notice with the plea of such special matter. The issues are to be tried as in other actions, and power is given to the court to grant new trials, as in other cases; and after the final determination of all such issues, the court is to ascertain and determine the rights of the parties, and give judgment that partition be made between them, or. such of them as shall appear to have any right therein, according to such rights. In this abstract of the first stages of the proceeding, several of the prominent features of the common law writ or partition are plainly discernible. The estate to be divided must be held by the parties to the partition in common, and the general defence against the petition for a division, is, that the petitioners and the defendants do not hold together. This was the substance of the demand, and of the general defence in the writ of partition. The intention was to substitute the petition for the writ; but to preserve the general outline and leading features of the action *of partition, as far as the forms of the statute proceedings, and a due regard to the rights and interests of the parties would permit, and especially to adhere to the avowed purpose of the" partition ; the seveance of the possession by' a division or sale of the pre *592 mises; and not to introduce an entire new system, extend- . ,r J mg to 'other objects and governed by different principles In conformity with this view of the subject, the act hath ppherto been, it is believed, uniformly applied to the purpose of dividing lands held in common among the part owners, and not to the purposes of litigating contested claims; and petitioners have supposed themselves bound to state in their petitions, and, if required, to show in proof that they were seised, at the time of presenting their petition, of the undivided shares they claim to have set apart to them. The petition invariably avers the seisin of the petitioners, and the petitioners, in this case, have conformed to the rule ; so uniform has the practice been, that no question has ever been raised on the precisd point. But the supr'eme court, in adjudicating upon the averments necessary to be made, and the effect of those that have been made in the particular instances which have come under the consideration of that court, have in effect, decided that the petitioners must aver a seisin of the parts of the premises they claim. Thus, in a case which occurred under the act of 1801, that court decided that an averment of seisin, generally, implies a seisin in fee ; and in the case of Bradshaw v. Callighan, (8 John. 558,) where the objection was, that the rights and titles of the parties were not set out at large in the petition, nor the seisin of the ancestor averred, but the,_ seisin of the petitioners and their co-tenants only, and that the allegation of seisin was in general terms, it was held by this court, on a writ off error, in affirmance of the judgment of the supreme court, that the words of the statute are satisfied by alleging the seisin of the present owners, which constitutes their title, and that the general allegation of seisin was sufficient plainly implying that an allegation of seisin is necessary, and that seisin must constitute a,part of the title of the petitioners.
*The supreme court, in the case of Ferris v. Smith, (17 John. 221,) proceed upon the same ground, and hold that the plea of non tenent insimul is not supported by showifig the quantity of'interest to vary from the statement of the petition; but is maintained by showing that the defendant *593 who pleads it had parted with all his interest. Indeed, the act appears to me to admit of no other construction. The tenements which the petitioners 'seek to divide, must be held in common between them and their co-tenants, and those terms if they do not require an actual seisin and possession at the time, certainly cannot be satisfied without a right of entry. When the right of entry is tolled, the estate of the owner is said to be totally divested, and put to a right. (2 Bl. Com. 197. Co. Lit. 345.) An actual disséisin produced that effect, and an adverse possession of 20 years’ continuance, has the same operation. An owner thus put to a right, has no seisin either in fact or in law. He does .not, in any legal sense of the term, hold the estate; and consequently, if he once was a tenant in common, or a coparcener with the disseisor' or adverse holder, he has ceased to be so, and the entire seisin of the premises is in the tenant in possession, -who holds the same in severalty; and the tenant who has been ousted and held out until his right to re-enter is lost, must reinstate himself by action in his seisin, before he can truly aver himself to be seised, or claim to hold in common with his former co-tenants. It follows that a special plea of sole seisin, or the general issue of non tenent insimul, to a petition for partition under the act, equally with similar pleas to a count in partition at common law, is supported by proof of a disseisin of the petitioners, or an adverse possession against them for twenty years; and that proof having been made in this case, the judge ought to have directed the jury, that if, in their opinion, an adverse possession for twenty years was sufficiently proved, they ought to find a verdict for the defendant against the petitioners.
This construction of the act is fortified by the provisions contained in the 13th section of it, by which it is enacted, that nothing contained in the act shall be construed in any manner to authorize the revival or prosecution of any claim *to lands which might otherwise be barred by the statute of limitations, or by the acquiescence of any party having such claim; or to aid the prosecution of any claim that may not be-so barred; but every such claim shall'be and remain in the same situation as if the act had not been *594 passed. The object of this section of the act tvas to remove all doubts on the construction of the first section, and to express in clear and decided terms the intention of the legislature to confine the provisions and operation of the act to its legitimate object, the division or partition of lands avowedly held in common, and to exclude all ques tions involving the right to the seisin or possession of the premises. The quantity of interest to which the part owners may be respectively entitled, and the conflicting claims of right or title when the possession is not drawn in question, but is admitted to belong to him who shall be adjudged to have the title, are to be settled by proper issues between the litigants, preliminarily tó the first judgment of partition.
But the -legislature deemed it unfit that the possession should be disturbed by proceedings for partition of premises held adversely to the petitioners; or that a party who has no right to enter upon the land, and enjoy it in common, should be entitled to have a part of it set off to him to hold in severalty. The right to have the estate divided, pre-supposes an acknowledged right to the possession and enjoyment of the part of it to which the petitioner claims to be entitled. It is the partition of lands in the possession of the part owners, that the act intends; and not the recovery of the possession of premises which are held adversely to the petitioners ; and the act therefore limits the partition it authorises, to estates and interests actually held in common; requires the petitioners to set forth the rights and titles of the parties; and gives the defendants who appear, the plea of non tenent insimul as the general issue ; thereby authorising an issue which shall dblige the petitioners to show a seisin in themselves, to establish a right to a partition ; and the lawgivers, for greater caution, in terms forbid any construction to be given to the act, or ■use to be made of it, which shall in any way control or interfere with the operation of the statute of limitations, *or aid the petitioners in obviating the impediments to the recovery of the premises they claim, from the provisions of that statute, or from their own acquiescence. Would the terms of those provisions of the partition act be satisfied, *595 by adjudging a partition, on the prayer of a petitioner, whose right of entry has been tolled by adverse possession, against the defence of the party in possession, on that ground ? If the proceedings under the act are to have that operation, must not the defendant, though clothed with the absolute right of sole possession, lose the benefit and protection of the statute of limitations, against the claim of the disseisee or ousted co-tenants ? Of what avail is his plea of non tenent insimul in such an exigency ? In an action of ejectment, or a writ of entry to recover the possession of the premises, his defence would be conclusive ; but if his assailant resorts to a petition for partition under the act, he is driven from his defence ; and his possessory title is rendered useless and unavailing. When such a course of proceeding is held admissible, is not the act so construed as to authorise the revival and prosecution of a claim to the possession of land, which might otherwise be barred by the statute of limitations, or at least, to aid the prosecution of a claim not yet barred; and does such claim, after the judgment in partition, remain in the same situation as if the act had not been passed ? It was urged, indeed, that the petitioners in this case, though they had lost the right of entry, were yet in time to insist upon their title, and to recover in a writ of right; and that upon showing such right upon the trial of the issue, they were entitled to a verdict and judgment under the act. But if the act will bear that construction, will it not repe'*1 or supersede the statute oí limitations ag applicable to tenants in common, with the single exception of that clause of it which applies to a writ of right ? Will it not defeat the possessory title acquired by disseisin or adverse possession, as between part owners!? Could the claim, then, of the disseisee or ousted part owner, be said to remain in the same situation as if the partition act had not not been passed; or would not the prosecution of such claim be aided by that act, and would not the obstruction interposed by the adverse possession which would *impede its prosecution at law, be removed ? Might not the partition act be in all cases used by the demandant whose entry was *596 tolled, as a substitute" for the writ of right to try his title and reinstate himself in his right ? and if so, would not the petition for partition be diverted from its original design, and become the process for the trial of titles, and the recovery of possessions between the part owners of lands 1
But again, if the true construction of the act should be held to admit of an issue between the parties upon the mere right, must it not still be at the election of the defendant to tender that issue, or an issue upon the right of' possession ? The act allows him to plead any special plea, or the general plea of non tenent insimul, with notice of any special matter that might be pleaded, ', Now, if under this permission, the mise might be joined upon the mere right, yet the defendant clearly is not limited to that issue, but is in terms, allowed to plead the general issue, peculiar to the writ of partition, or to plead any special plea he chooses. In this case he has elected to plead sole seisin, and to traverse the seisin of the petitioners; and on that traverse the issue was joined. Must not the parties, then, be confined to that issue? And could the petitioners under it recover upon the mere right; or must they not show an actual seisin, or at least, a right of entry, to entitle them to a verdict ? To obviate these difficulties, it was said that the proceedings in partition were not calculated or intended for the recovery of the possession, but to ascertain and determine the rights of the parties ; and that the petitioners, after the judgment in partition, would be left to recover the shares allotted to them, in the action of ejectment or writ of right; to which actions the statute of limitations would remain a bar. But a moment’s attention to the results of the judgment in partition will show this reasoning to be illusory and unsound. The judgment in partition, it is true, does not of itself change the possession ; but it establishes the title, and in an ejectment or writ of right, must be conclusive. The suit will be brought by the party, not for his undivided part, but for his separate share of the premises allotted to him on the partition, and the judgment of the court, adjudging that share to belong to him, and allotting it to him to hold *in sev ■ *597 eralty, must be sufficient to entitle him to recover it. Nor do I see how an adverse possession could be a defence against an ejectment upon such a judgment. The answer to it would be, that the objection, if available, should have been taken to the partition itself; for that partition could not be made until the right was first ascertained and determined, by the court, and that the judgment in partition had conclusively established the right and title of the parties, and proved the allegation of seisin made in the petition for partition to be true. How could adverse possession or disseisin be alleged against that averment in the record of the judgment, and against a verdict on an issue between the parties to the record in favor of the petitioners upon the very point of seisin 1 The verdict and the judgment in partition must surely be conclusive in an action of ejectment against the defence of adverse possession.
But again; suppose the premises, instead of being divided by the commissioners, should be sold under the 5th section of the partition act; must not the moneys raised by the sale be distributed among the parties to the petition ? The direction of the act to distribute, when the owners are known, is express and general; there is no exception to it; and adverse possession would surely not be a sufficient bar to such distribution. The intention and direction of the act clearly is, that the money shall, in all cases of sale, be distributed among the parties whose shares and interests have been ascertained and determined, according to their rights as adjudged by the court; and the intention must, therefore, in my judgment, be that the parties must establish their rights'to the seisin and possession of the premises, as well as the mere right, before judgment can be given for either a partition or sale of the estate ; since the party having the possessory right vested in him at the time of the petition for partition must, upon any other construction of the act, lose the whole benefit, in case of the sale of the premises, of the statute of limitations for the protection of such right of possession. Was it not the obvious intention of the legislature in the 13th section of the partition act, to guard against its interference with the provisions of the *598 statute of limitations; and can any Construction of the act for the partition of lands be in accordance with that intention of the law-makers which does not effectually secure the party in possession against the loss of that protection which the statute of limitations would otherwise afford him?
Now, the possessor who has held adversely for 20 years, has acquired a right of possession which the statute of limitations will protect against an ejectment or writ of entry. But a sale in partition, if authorised by the act, must divest him of that right, and take from him his possession, and he sustains an irreparable loss by the operation; for his right of possession gives him no claim to the money raised by the sale. If, under other circumstances, any such claim .could have been preferred, it is excluded by the judgment of the court, by which the title of the land, and the right of the proceeds of the sale of it, are adjudged to belong to another.
But again; why should the party in possession be subjected to the vexation, trouble and expense of a suit for partition, by a claimant who is out of possession, before his right to the possession of the undivided .part he claims is established ? If the judgment in partition is to be used against the party in possession, then the assailant will be furnished with a weapon against which the shield of the statute of limitations will be no protection; and, if the judgment is not to be used, the claimant may be unable to recover the possession of the share set apart to him; and the proceedings in partition would, in such case, be nugatory, and involve the party in possession in a useless and onerous charge. In the present case, if the petitioners are to be put to their writ of right after the partition, for the recovery of the part allotted to them, and the statute of limitations is to run against them to the time they bring their writ, considering that the adverse possession against them is admitted to have commenced as early as the 3d of May, 1803, and is claimed to be of anterior date and origin, they may be too late to recover on any mise to which they could entitle themselves. But if they are in time foi *599 ffieir remedy by writ of right, why should they be permitted to reverse the usual order of proceedings; and first to sue - for partition of the undivided premises which are held ^adversely to them, and then to recover the possession of parts allotted to them on the partition against the adverse holder, instead of first establishing the right to the possession of the undivided shares they claim, and then suing for a severance of the possession between themselves and the other part owners ? It is surely most consonant to the principles of justice, and the course of judicial proceedings, to require that a party who is out of possession, and especially after his entry is tolled, should first reinstate himself in his possession, and then sue for the partition of the estate : and I am satisfied that such is the intention of the act.
But it is said to have been decided by the supreme judicial court of the state of Massachusetts, that actual seism is not necessary to maintain the statute process for partition; and the case of Barnard v. Pope, (14 Mass. Rep. 434,) is cited as the authority for the position. In that case there had been a sole possession for only ten years; there had been no actual ouster, nor any refusal to account for the rents and profits; and the court say that the right of entry remained at the time of filing the petition ; and they held that under those circumstances, there was a sufficient.seisin to maintain the process. In a previous case, in the same court, between Bonner and others and The Proprietors of the Kennebec Purchase, (7 Mass. Rep. 475,) it had been ruled that actual seisin in the petitioners was necessary to maintain the process for partition; and Chief Justice Parker distinguishes the case before him from that case, on the ground that the right of entry in that case was gone; but that in the case before him it remained. He admits the rule of the common law and the English statutes to be, that a writ of partition cannot be maintained by a tenant in common who has been dis seised; but he takes the ground that the possession of one tenant in common is the possession of all; and the t there must be overt acts of ouster, or a sole and exclusive posses *600 sion for more than 20 years, so that the right of entry is gone, before a disseisin is to be pronounced; but such possession, he admits, would conclude the party. That case, then, may be an authority.to show that mere adverse possession, or the want of actual seisin, is not sufficient in that state to bar or ^preclude a partition between tenants in common, who, in the' absence of actual ouster, have a constructive seisin; but it is an authority also to show, that where the right of entry is lost, the process of partition is not maintainable:
The principle of that case, therefore, would protect the defendant in this ; for, in this case, the right of entry was tolled by twenty years adverse possession. The case cited from Harris & McHenry’s Reports shows that the same rule prevails in the state of Maryland; and that an adverse possession for 20 years is held by the courts of that state to be a bar to a partition. (2 Harris & McHenry, 254.) This case with those before cited to the same point, shows that the rule in England and in our sister states of Massachusetts and' Maryland require a right of entry, at least, in a plaintiff or petitioner, to enable him to sustain the writ or statute process for partition. Our partition act is full as restrictive in its provisions, if not more so, than those of Massachusetts or Maryland; and it would seem strange, therefore, that our 'courts .should allow greater latitude to the petitioners than the courts of those states.
In the court of chancery, which has an extensive jurisdic in partition, and is in the habitual exercise of it, the course is to' require that the title of the complainant be first established, before partition is decreed. An adverse possession for twenty years would' be a fatal objection; and when interposed, must invariably stay the proceedings. The bill may not be dismissed; but the cause must stand over until the complainant establishes his right and recovers the seisin and possession at law. In analogy to the course of that court, the just and reasonable construction of the partition act would fairly admit, and I think requires, the same rule to be applied to the proceedings in the supreme court. The only difference is, that in equity, the bill, if filed, will *601 not be dismissed, but stand over; but at law, the petitioner must clear the premises of the disseisin or adverse possession before he prefers his petition for partition; and if he proceeds when his his entry is barred, the petition will for that cause, when shown, be dismissed.
*But it is said by the supreme court to be the duty of that court to ascertain and determine the respective rights of the parties, and to give judgment that partition be made according thereto. The answer is, that that duty does not devolve upon the court until after the final determination of all the issues between the parties ; and is never to be performed unless those issues, which involve the right of the petitioners to partition, terminate favorably to them. After the issues of fact between the parties are settled by the jury, and the questions of law that may arise upon them are disposed of by the court, if the objections to the petition are removed, it does become the duty of -the court to ascertain and determine the rights of the parties, and give judgment according to those rights. But the right to the partition is a preliminary question; and may depend upon either the facts of the case or the law arising upon them; and if any issue in law or in fact which may be taken upon that preliminary question, is decided against the petitioner, and is decisive of that question, his petition must be dismissed ; and no judgment of partition can be given. The error of the supreme court in this case appears to me to consist in their proceeding to judgment of -partition on the petition. An issue of fact had been joined upon the seisin of the petitioners, which involved the right to a partition ; and the evidence on that issue was decisive against them. The verdict of the jury, it is true, is in favor of the plaintiffs or petitioners; but that verdict was given under and in conformity to the charge of the circuit judge, before whom the issue was tried, to which the counsel for the defendants excepted.
The charge and exception both appear in the bill of exceptions. The circuit judge in his charge declared and delivered his opinion to the jury, that the matters produced and given in evidence on the part of the defendant below, *602 (and who, as we have seen, proved an adverse possession for more than twenty years,) were not sufficient to bar the plaintiffs of their action; and the jury, in conformity to that direction, found a verdict for the plaintiff; and the defend, ant’s counsel excepted to the opinion of the court, and insisted on the said matters as bar to the action. The correctness of the charge *and opinion of the circuit judge, on which the validity of the verdict depended, was the point brought before the supreme court, by the bill-of exceptions, for decision; and that court determined that the verdict, notwithstanding the exception of the defendant, was not erroneous or improper; but that it was good and valid in law.
Such is the history of the case upon the record. That record refers to a stipulation, whereby the fact appears to be that the case never was in truth passed upon by the jury; but that a case was made for the opinion of the supreme court, with liberty to turn it into a Bill of exceptions or special verdict; and that after the judgment of the supreme court upon the case, in favour of the plaintiffs, it was turned into a bill of exceptions, for the purpose of bringing it before" this court. To the opinion of the supreme court, then, we are to look for the grounds of the judgment, and for an explanation of the charge or opinion to the jury appearing by the record to have been delivered. We there find the court distinctly to admit, that the defendant’s possession was adverse for more than 20 years ; and that the possessory right of the plaintiffs was gone; but that such adverse possession did not support the issue on the part of the defendant because the plaintiffs had a remedy by writ of right, and were therefore entitled to partition ; and if this opinion of the supreme court, as given in the reasons for the judgment and put upon the record, was correct, then the further duty of that court clearly was, to proceed to ascertain and determine the rights of the parties, and render judgment of partition; but if they erred in their opinion, and the verdict ought to have been set aside, then they mistook their duty, which, in such case, was to award a new trial of the issue. That is the question now *603 before this court; and if the adverse possession and possessory title of the defendants did disprove the plaintiffs allegation of seisin, it maintained the issue on the part of the defendant, and the jury ought to have been charged to find a verdict for him.
But it is objected that the question of adverse possession was for the jury and not for the court to decide ; and that the verdict of the jury set forth in the bill of exceptions, being *in favor of the plaintiffs below on the issue, is conclusive against the adversity of the defendant’s possession. To this objection the record itself gives an answer which I have already noticed, and deem sufficient. It was a verdict given under and in conformity to the opinion of the judge; and its efficacy depends on the soundness of that opinion. The fact of adverse possession, or in other words, whether the premises have been held by the defendant as his own against the claim of the plaintiff, is a question for the jury; but the evidence adduced on the trial to establish or disprove that fact often involves points of law which the court is to decide ; and the duty of the judge is to submit the questions of fact to the jury under his direction and opinion on the questions of law which the evidence before them may involve. In the present case, independently of the stipidation of the parties, to which we cannot shut our eyes, it sufficiently appears from the record itself that the verdict was given in conformity to the opinion of the court expressed in the charge, and did not result from the deliberations of the jury upon the evidence. The record, though not so full as would be desirable, discloses enough to show that this course was substantially pursued. In strictness, the charge should have been, that if the jury, from the evidence, should find that the possession had been adverse to the petitioners for more than 20 years, then the defendant below was entitled to a verdict; but the direction, as stated in the bill of exceptions, is different. If an opinion had been expressed upon the result of the evidence, that opinion, as the supreme court declare in the reasons they assign for their judgment, must have been that the evidence did establish an adverse possession for upwards of twenty *604 years- Yet the. charge stated on the record is, that the» evidence is not sufficient to bar the plaintiffs’ action. The court then expressed an opinion to the jury, upon the whole eTj¿ence> jn favor 0f the plaintiffs against the defendant ; and the jury, if they adopted that opinion, as they must be presumed to have done, were bound to find for the plaintiffs. The evidence on which that opinion was expressed is brought up to this court by the bill of exceptions; and the reasons of the supreme court for their opinion are before *us, and I am constrained to say that, in my judgment their opinion was erroneous.
It is certainly true, as was contended on the argument, that a verdict cannot be reversed in this court, as being, against the weight of evidence; and when the jury are left free to exercise their own judgment, their decision on questions of fact, though subject to review' in the court where it is given, is conclusive" here. [1] But if the judge interposes an opinion, or gives a direction on a point of law, or on the legal results of the evidence, the jury are to act under its influence, and if erroneous, the verdict will be vitiated by it; and when regularly brought up by writ of error from the judgment of the supreme court upon it, may be set aside for that cause in this court.
In Doe v. Prosser, (Cowper, 217,) it is laid down by the court, that the jury, after twenty years’ adverse possession, is to find an ouster ; and in the case of Ricard v. Williams, (7 Wheaton 59,) similarly circumstanced with this, where one of the heirs of the ancestor entered claiming, not as heir, but under a distinct title, kept the exclusive' possession, and held out the other heirs, until the right of entry was barred by lapse of time, the court held, that the jury ought to have been instructed, that if they were satisfied that the defendant’s possession was adverse to that of the other heirs, under a claim of title distinct "from, or paramount to that of the ancestor, during his period of exclusive possession, which in that case was 25 years, the entry of a purchaser under a sale of the estate as the property
*605 of the ancestor, was not congeable ; and because the jury were not so instructed, the circuit court had erred, and the judgment was reversed.
So in this case, the evidence clearly showing an adverse possession for more than 20 years, the verdict of the jury upon the issue ought to have been for the defendant; and the jury ought to have been charged, that such adverse possession, if proved to their satisfaction, was sufficient in law to bar the plaintiffs’ entry, and to entitle the defendant to a verdict; and the opinion of the court as stated to •fie jury, that the evidence Was not sufficient to bar the action was, according *to my views of the law, clearly wrong ; and the judgment of the supreme court, founded upon the verdict given in conformity to that opinion, ought to be reversed, and a new trial of the issue awarded.

Per totam curiam.

Rule accordingly.

 Eggleston v. Bradford, 10 Ohio, 312. Wilson v. Inloes, 11 Gill & J. 351. 1 Chity Pl. 190

 Fosgate v. Herkimer, Man. Sec. Co 12 Barb. 352.

 Humbert v. Trinity Church, 24 Wen. 586. Dig. N. Y. Rep. by Hogan, tit. adverse possession.

 Humbert v. Trinity Church, 24 Wen, 586. Jackson v. Tibbits, anta 241. McCluny v. Ross, 5 Wheat. 116.

 Varick v. Jackson, 2 Wen. 166, 4 Kent t 482 et seg.

 Adverse possession can only exist as against a person entitled to the possession. Clark v. Hughs, 13 Barb. 147. Jackson v. Schoonmaker, 4 John. 389.

 And vid. Jackson v. Harsen, (6 Cowen, 323.)

 And vid. anie, 252-3, and the cases there cited.

 Prescott v. Nevers, 4 Mason 326. Parker v. Proprietors &c, 3 Metcalf 91.

 Ross v. Durham, 4 Dev. & Bat. 54.

 Livingston v. Peru Iron Co. 9 Wen. 511.

 Ross v. Durham, 4 Dev. & Bat. 54.

 9 Wen. 511. But the law will never construe a possession tortucas unless from necessity. Oh the other hand, it will consider every possession lawful; the commencement and continuance of which is not proved to be wrongful. Ricard v. Williams, 7 Wheat. 107 : per Story, J.

 Oakley v. Van Horn, 21 Wen. 305.