# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1841, AT CAMBRIDGE.

PRESENT.

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY,

---

## GRENVILLE PARKER vs. PROPRIETORS OF THE LOCKS AND CANALS ON MERRIMACK RIVER.

If one tenant in common of land executes a deed of the entire estate, and the grantee causes the deed to be recorded, and enters into possession, claiming title to the entirety, and openly exercises acts of ownership, it is a disseizin of the cotenants, and they cannot subsequently pass their portion of the estate by a deed to a third person

Where part of several tenants in common of land convey their shares thereof by deeds to A., who afterwards executes to B. a deed of the whole estate, and B. enters claiming the whole, and disseizes the cotenants; and then conveys the whole estate to C., who also enters claiming the whole, and the cotenants then make a deed of their shares of the land to D., and he impleads C. in a writ of entry, C. is not estopped, by the deeds to A., to set up a title by disseizin.

WRIT of entry to recover eleven twenty-eighths of one acre and forty-nine rods of land in Lowell. The demandant counted on his own seizin within 20 years, and a disseizin by the tenants

It appeared at the trial before the chief justice, that between the years 1760 and 1770, a lot of land of about eight acres, which included the demanded premises, was assigned to Mary Hall as her dower in the estate of Zebediah Keyes, her former husband, and that she died in possession of the same, in 1812. On her death, said land reverted to the heirs of said Keyes, and

those claiming under them. Joseph Moors (who claimed under one of said heirs) and several others thereupon joined in a petition for partition of said land ; and in pursuance of a judgment thereon, a parcel, of which the demanded premises are an undivided part, was set off to said Moors, by commissioners, on the 3d of November 1812, and their proceedings were duly confirmed by the circuit court of common pleas, at March term 1813. Said Moors was *non compos mentis*, and was then, and until his death in August 1814, under the guardianship of Moses Hale ; and his heirs were his brothers, Herbert, Micajah and Larkin Moors, and his nephews, Simeon and Jesse, sons of his deceased brother, Miel Moors, and their sisters, Lucretia, wife of Jason Sanders, Joanna, wife of Jeduthun Warren, and Esther, wife of Joshua Marshall. The said Joshua died in August 1827, leaving issue born before the decease of said Joseph Moors. The said Lucretia died in 1834, never having had issue.

The demandant claimed four twenty-eighths of the demanded premises under a deed to him from Jason Sanders and wife, dated October 6th 1831 ; four twenty-eighths under a deed from Larkin Moors ; and three twenty-eighths under a deed from Esther Marshall. The two last mentioned deeds were dated October 20th 1831, and the three deeds were recorded on that day. Each of these deeds purported to convey, in form of release and quitclaim, all the said grantors' interest in their respective shares of the demanded premises ; and there were covenants of warranty against the lawful claims of all persons claiming by or under the grantors, respectively.

.The tenants claimed under the following deeds : 1. A deed from said Moses Hale to Nathan Tyler, dated October 12th 1815, and recorded December 23d 1817, warranting against the lawful claims and demands of all persons, and describing the demanded premises, and other lands, amounting to three acres and eighty-five rods : In this deed the grantor did not covenant for his heirs or legal representatives. 2. A deed from Nathan Tyler to Thomas M. Clark, in common form of warranty, for himself and his heirs, &c. dated November 2d 1821, recorded on the 23d of said November : 3. A deed from said Clark to Kirk

Boott and others, dated December 13th 1821, recorded on the 18th of said December : 4. A deed from said Boott and others, dated May 18th 1822, recorded on the 2d of August following, to the Merrimack Manufacturing Company : 5. A deed from said company to Joseph Fletcher, dated November 23d 1822, recorded February 11th 1823 : 6. A deed from said Fletcher to said company, dated October 8th 1824, recorded the 20th of the same month : 7. A deed from said company to the tenants, dated January 2d 1826, recorded on the 8th of June following. The five last mentioned deeds were quitclaim, with warranty against all persons claiming through or under the grantors respectively.

It appeared by the testimony of Perley Hale, that his father the said Moses Hale, pastured his cows on the Keyes pasture lot, including the demanded premises, one or two seasons, from the year 1813 to 1815 ; that the said lot was inclosed with other lands owned and occupied by his father, lying upon each side of it, making what was called the Keyes pasture lot, and bounded on the southwest by land of Nathan Tyler, and on the northeast by land of Josiah Fletcher. He believed there was a fence separating the said pasture from the said Tyler lot, but could not swear positively. His father, at the time he sold to said Tyler that part of said pasture which lay next to said Tyler, conveyed the other part to said Josiah Fletcher.

Susanna Hale, widow of said Moses, in a deposition offered by the demandant, testified that the Keyes pasture lot was the widow's thirds ; that her husband was in the occupation of it two or three years before 1816, as a pasture ; and in answer to the demandant's interrogatory, whether the Keyes pasture was a common pasture when her husband occupied it, she said " there was no division fence."

Ignatius Tyler testified, that he was the son of Nathan Tyler, and knew the lot called the Keyes lot ; his father owned and occupied it as a pasture a number of years before he sold it, cut off the bushes, and made a division wall between Fletcher's and this lot. He bought it of Moses Hale, and went into immedi ate occupation, and occupied till he sold it to Thomas M. Clark

One year he plowed it, and sowed with rye all that was fit for cultivation.

Moses Shattuck testified, that he had superintended the outdoor work of the tenants since the year 1822, and knew the Keyes lot : John Short occupied it as a pasture in 1838 and 1839, under a demise to him by the witness as agent of the tenants.

Robert Taylor testified, that he lived in Lowell eight or nine years before 1833, and hired the Keyes lot of the tenants three years, 1826, 7 and 8, or 1827, 8 and 9. He occupied it as a pasture and paid rent. Foster Newhall occupied the next two years. Then Cyrus Johnson occupied it as a pasture, the two following years. Newhall plowed a part of it, and pastured the rest. He professed to occupy under the tenants. He told the witness, during the time of his occupation, that he occupied under the tenants.

The demandant put into the case a quitclaim deed, with covenants of warranty against all persons claiming under the grantors, dated September 26th 1815, made by the aforesaid Herbert, Micajah, Larkin and Simeon Moors, and Joshua Marshall, Jeduthun Warren and Jason Sanders, to said Moses Hale, acknowledged by said Simeon, February 2d 1832, and by said Larkin, Februal ary 3d 1832, and recorded on the 22d of the same February.

Evidence was offered by the tenants to show, that Larkin Moors was an insane person, and incompetent to transact business at the time of his making said deed to the demandant. It appeared by the same evidence, that he was in the same condition at the time of his making his said deed to Moses Hale. This evidence was ruled by the chief justice to be immaterial.

The demandant offered in evidence a deed of quitclaim and release from said Esther Marshall to the tenants, dated February 3d 1832, and recorded the 22d day of the same month, conveying her interest in the demanded premises, for the purpose of showing that the possession of the tenants, so far as proved in the case, was not adverse to said Esther ; which was rejected as not being any evidence of possession.

It was conceded, that the land described in the demandant's

writ and deed, was a part of the widow Keyes' thirds ; that she afterwards married one Hagget, and then Hall, and died about 1812 : That she was the widow of Zebediah Keyes, and took the thirds as his widow, being part of the estate of which the said Zebediah Keyes died seized ; and that Daniel Keyes conveyed the estate, including the reversion in the widow's thirds, to Joseph Moors, father of Simeon, grandfather of Jo seph, the *non compos.*

The tenants contended that nothing passed by the deeds of Larkin Moors, of Jason Sanders, and Lucretia his wife, and of Esther Marshall, to the demandant, in October 1831, be-cause the said grantors were then disseized, having been dis-seized by Moses Hale in 1815 ; the said Hale and those claim-ing under him having had the exclusive occupation and possession of the premises till the present time.   But it was insisted by the demandant, that such occupation did not constitute a disseizin, because the said Hale, by the aforesaid deed of September 26th 1815, took the estate of some of the heirs of Joseph Moors, who held as tenants in common, and thence held as tenant in common with those under whom the demandant claims, and so his possession, and the occupation of those claiming under him, did not constitute a disseizin.   He also contended, that by the same deed the estate of Larkin Moors did not pass to the said Hale, as against the demandant, because the said deed was not acknowledged and recorded until after the deed of the same Larkin Moors to the demandant ; and so the demandant took as a purchaser, without notice of such prior conveyance :   Also, that the estate of Esther Marshall and Lucretia Sanders did not pass to said Hale by the same deed, for the reason already stated in respect to Larkin Moors, and also, because the deeds were executed by Joshua Marshall and Jason Sanders, respec-tively, without their said wives, and so the estate in fee, vested in the wives, and did not pass.

By consent, the action was taken from the jury and continued, subject to the opinion of the whole court, upon the question, whether the demandant is entitled to recover.   Judgment to be entered on nonsuit or default according to that opinion.

The argument was had at October term 1840.

*Greenleaf & G. Parker*, for the demandant.

1. Hale was not a disseizor, nor are the tenants, unless by election of the demandant, for the sake of his remedy. Of course the title of the demandant's grantors passed to him by their deeds in the case. Hale, as guardian of Joseph Moors, had, by *St.* 1783, *c.* 38, the lawful possession of his real estate; and if he held over, his possession was of the character of tenancy at sufferance. If, however, Hale's possession were adverse and a disseizin, before he took a deed from several of the heirs, the acceptance of that deed purged the disseizin. *Small* v. *Procter*, 15 Mass. 499.

The general doctrine on this subject is, that where an act is done which is equivocal, and may be either a trespass or a disseizin, the law will not permit the wrong-doer to qualify his own act, but leaves its character to be determined by the party injured. *Prescott* v. *Nevers*, 4 Mason, 329. *Jerritt* v. *Weare*, 3 Price, 598, 599. *Pennington* v. *Morse*, Dyer, 62 *a*. *Blunden* v. *Baugh*, Cro. Car. 302 – 304. *Doe* v. *Batten*, Cowp. 243. *Taylor* v. *Horde*, 1 Bur. 60. *Tinkham* v. *Arnold*, 3 Greenl. 120. *Porter* v. *Hammond*, 3 Greenl. 188. And where, in any of the cases, it is said that the question of disseizin is to be determined by the intent of the entry, the legal as well as actual intent is meant. In the case at bar, the legal intent was to preserve the property for the true owners; and it is to be treated like the case of a *possessio fratris*. Hale's purchase, in 1815, of part of his former ward's title, shows that the legal view of the nature and intent of his possession is true in point of fact. His entry, under the deed of 1815, was without actual expulsion of his cotenants, and gave him such a seizin that the law will adjudge the possession to be in him who has the right. *Anon.* 1 Salk. 246. *Bates* v. *Norcross*, 14 Pick. 227. He became seized only of the proportions which he purchased; but his seizin accrued to the benefit of all. *Liscomb* v. *Root*, 8 Pick. 378. *Barnard* v. *Pope*, 14 Mass. 438. One tenant in common can disseize another only by actual ouster, or by exclusive pernancy

OCTOBER TERM 1841. 97

Parker v. Proprietors of Locks and Canals on Merrimack River.

of profits, against the will of the other. Cowp. 218. 5 Mass. 352. 10 Mass. 468. 12 Mass. 149. 1 Greenl. 91.

2. Hale having purchased a title from some of the cotenants at a time when he had no pretence of title in himself, and was occupying in submission to their title — neither he nor his grantees can now deny the title or seizin of the common ancestor or grantor, and of the other persons claiming under him. *Blight* v. *Rochester*, 7 Wheat. 549. The general rule is, that a grantee shall not be received to disparage the title under which he holds. The exception to this rule arises only where one, who has a lawful title, buys his peace by extinguishing an adverse claim. 7 Wheat. 547, 548. *Fox* v. *Widgery*, 4 Greenl. 214. Further : Deeds of conveyance, in this State, are construed by the legal rights of the parties. If a tenant for life conveys by deed in fee, it is construed as a deed for life. Rev. Sts. c. 59, § 6. So if one tenant in common convey the whole estate, it shall be intended of his part only, unless the contrary intent clearly appears.

3. The deeds to Hale, made by Larkin Moors, Marshall and Sanders, cannot affect the demandant, for want of notice Hale's possession was only implied notice of title, even to those claiming *under him*. *Hewes* v. *Wiswell*, 8 Greenl. 94. *Bates* v. *Norcross*, 14 Pick. 224. And such implied notice, in order to operate in exclusion, must be a " necessary and unquestionable inference from the facts proved." *McMechan* v. *Griffing*, 3 Pick. 155.

4. The estate of the wives of Sanders, Marshall and Warren, did not pass to Hale, as they did not join in their husbands' deeds of February 1832. *Melvin* v. *Proprietors*, &c. 16 Pick. 137.

5. As both parties claim under Larkin Moors, neither can disparage his capacity to convey. Lunacy renders a deed voidable only. 2 Bl. Com. 291. 2 Dane Ab. 23. And a lunatic's deed can be avoided only by privies in blood and legal representatives. Shelford on Lunatics, 263. The demandant's deed of Larkin's share was first recorded, and there is no evidence of notice to him, express or implied, of a prior unregistered deed.

*S. Hoar & Hopkinson*, for the tenants. Hale, by holding over, after his guardianship ceased, disseized the heirs of the ward. Co. Lit. 57 *b*. *Porter* v. *Perkins*, 5 Mass. 233. The subsequent occupation was a disseizin, if mere holding over was not. The whole evidence shows an adverse possession. If Hale held under the deed of 1815, he held as tenant in common, and ousted his cotenants. *Fishar* v. *Prosser*, Cowp. 217. *Gordon* v. *Pearson*, 1 Mass. 323. *Ricard* v. *Williams*, 7 Wheat. 120. 2 Bl. Com. 194. Stearns on Real Actions, 40. *Cummings* v. *Wyman*, 10 Mass. 464. *Bigelow* v. *Jones*, 10 Pick. 161. *Higbee* v. *Rice*, 5 Mass. 351. 4 Dane Ab. 18. There was no necessity to register the deed from Larkin Moors, in order to give notice — as there had been such an open possession for a great length of time, as amounts to notice to all persons. The facts of the case are sufficient to warrant a jury in presuming that Hale held a good title by deed from the proper grantors. And Tyler's occupation was a disseizin, if Hale's was not.

WILDE, J.* The principal question, on which the decision of this case depends, relates to the title set up by the tenants. The question is whether, upon the facts reported, they have made out a good title by disseizin, commencing before, and continuing until, the time when the demandant purchased the premises of several of the heirs of Joseph Moors, who was the undisputed owner of a parcel of land, including the demanded premises, and died seized of the same. Unless, therefore, the heirs were disseized, when they conveyed to the demandant, his title is clearly good and the action is well maintained. On the contrary, if the demandant's grantors were disseized when they made their conveyances to him, it is equally clear that their title did not pass by those conveyances, and the tenants' title must prevail.

That the deed of a disseizee, the disseizin still subsisting, is inoperative to convey the title, is a familiar principle of the common law, which cannot be controverted. And on this prin-

* *Putnam*, J. did not sit in this case.

ciple, the counsel for the tenants maintain the defence ; contending that they have given clear and conclusive evidence of the disseizin of the heirs of Joseph Moors, under whom the demandant claims title.

By the report of the evidence, it appears that Joseph Moors was a *non compos*, and that Moses Hale was his guardian, and occupied the Keyes pasture lot, including the demanded premises, during the life of Moors, and after his death ; it being inclosed with other lands, owned and occupied by the said Hale, lying upon each side of it : That after the death of Moors, Hale purchased of several of his heirs their rights in the pasture, and soon after conveyed the whole of it to Nathan Tyler, with the usual covenants of seizin and of warranty against the lawful claims and demands of all persons.

The evidence thus far, we think, does not show any possession adverse to the title of Moors or his heirs. During his life, his guardian had the right of occupation ; and after his death, if his guardian continued his occupation, the presumption is, that it was for the benefit of the heirs ; and this presumption is confirmed by his purchasing the shares of several of the heirs soon after. If, before that purchase, Hale's possession was adverse, so as to amount to a disseizin, the disseizin would be purged by that purchase. His subsequent possession must be considered as the possession also of the other heirs, from whom he had not obtained a title. If a person enters on land, having no right or title, and maintains the exclusive possession, taking the rents and profits, his possession would be considered adverse, and, if of sufficient notoriety, would amount to a disseizin. But if a person enters, having a title and a right to enter, his entry and possession are presumed to be in conformity to his title. No man is presumed, without evidence, to have done, or to have intended to do, an unlawful act. If then a tenant in common enters on the common property, and takes the whole rents and profits without paying over any share thereof to his cotenants, his possession is not to be considered adverse to them, but in support of the common title. Lord Mansfield says that a refusal to pay such shares is not sufficient evidence of an ouster, without den-

ing the title. Cowp. 218. It is true, that if a tenant in common continues in possession for a great length of time, without interruption or claim by the other tenants, this would be evidence from which a jury would be authorized to infer or presume an actual ouster ; and so on similar evidence a grant may be presumed. But there is no ground for any such presumption or inference in the present case. The only evidence tending to show that Hale intended to hold the premises adversely to his cotenants, is his deed to Tyler, in which he undertakes to convey the whole estate ; and the material question is, whether this conveyance, and the entry and possession of Tyler claiming under it, are sufficient in law to constitute a disseizin.

It was proved at the trial, that Tyler, immediately after his purchase from Hale, went into possession and occupation of the granted premises, and continued his occupation, without interruption or claim of any one, until he conveyed the same to Thomas M. Clark, with the usual covenants of seizin and warranty, as he purchased the same from Hale. During this time, (a period of more than six years,) he occupied the lot as a pasture, cut down the bushes, made a division wall between that and an adjoining lot, and one year plowed it and sowed it with rye. These facts, being admitted, are in the opinion of the court, conclusive proof of the advere possession of Tyler, and show a disseizin of the heirs of Moors, under whom the demandant claims. For although the right and title of those heirs did not pass by the conveyance from Hale to Tyler, yet the deed purported to convey the whole estate. Tyler purchased the whole, with a warranty of a good and indefeasible title, and he sold it afterwards with the same warranty. The presumption is, that he intended to hold the estate in conformity to his purchase ; and there is no evidence to rebut the presumption.

It does not appear that Tyler had notice or knowledge of the defect in his title. But whether he had such knowledge or not, it is very clear that he was in possession, claiming the entire title ; and this undoubtedly was an adverse possession, which, being open and notorious, amounts to a disseizin. To constitute a disseizin, it is not necessary, at the present day, to prove

.he forcible expulsion of the owner ; nor is it necessary for a tenant in common to prove an actual ouster of the cotenant. If he enters, claiming the·whole estate, the entry is adverse to the other tenants. The intention so to hold the estate must be manifest, as it is in the present case ; and the open and notorious possession of Tyler was constructive notice of a claim adverse to those heirs of Moors who had not conveyed their title. If they had notice by the deeds to Hale, and by him to Tyler, (which were duly recorded,) they must have known that the latter never entered as tenant in common, but that he entered as purchaser of the entire estate.

That this adverse entry and possession, claiming the whole es· tate, constitute a disseizin, is fully maintained by the cases cited by the tenants' counsel, and by all the modern authorities. The doctrine is fully discussed by Story, J. in *Prescott* v. *Nevers*, 4 Mason, 330. In that case, as in this, the defendant had a deed of the whole estate, but his title was only valid as to an undi vided quarter part, in common with other owners. But he made an actual entry into the whole, claiming the entirety in fee and of right. And it was held, " that his acts of ownership were such as amounted to a disseizin of the cotenants ; for he entered as sole owner, and his possession was openly and notoriously ad verse to them." " There can be no legal doubt," as it is said by the court in that case, " that one tenant in common may disseize another. The only difference between that and other cases is, that acts which, if done by a stranger, would *per se* be a disseizin, are, in the case of tenancies in common, susceptible of explanation, consistently with the real title. Acts of owner- ship are not, in tenancies in common, necessarily acts of dis- seizin. It depends upon the intent with which they are done, and their notoriety." We consider this a sound distinction, and it is fully supported by the authorities.

In the case of *Clapp* v. *Bromagham*, 9 Cow. 530, which was in all respects substantially similar to the present case, the same decision was made, and the same doctrine of disseizin was laid down by Chancellor Jones, who discussed the subject very fully and very ably. The English authorities, cited in that case, full}

support the distinction laid down by Story, J. in *Prescott* v. *Nevers.* So in the supreme court of the United States, in *Ricard* v. *Williams*, 7 Wheat. 121, the same distinction was laid down. The court say "an ouster or disseizin is not, indeed, to be presumed from the mere fact of sole possession; but it may be proved by such possession, accompanied with a notorious claim of an exclusive right."

By these and other authorities which might be noticed, if necessary, the doctrine of disseizin, as it has been held, seems to be well settled. To constitute a disseizin, actual force is not necessary; but open and exclusive possession, accompanied with acts of ownership, manifesting the intention to hold the whole estate, adversely to the title of the true owner, is sufficient. Such a notorious adverse possession is considered as a constructive ouster, and is equivalent to an actual expulsion. The doctrine is founded on a reason similar to that assigned as the ground of the ancient doctrine of disseizin by the operation of a grant, which was founded principally on the notoriety of such a conveyance.

We are therefore of opinion, upon the facts reported, that the demandant's grantors, before their conveyances to him, had been disseized by Tyler; that this title by disseizin passed by his conveyance to Clark, and from Clark, through several intermediate conveyances, to the tenants. They leased the pasture, from time to time, to sundry persons, who continued the open and notorious occupation of the same, and one of whom was in the exclusive possession and occupation at the time of the conveyances to the demandant. 1 Shepley, 337.

It has been argued that the tenants are estopped to set up this title by disseizin, by the deeds of the heirs of Moors, who conveyed, on the 26th of September 1815, their shares in the estate to Hale; but we think very clearly, that the title by disseizin is derived from Tyler, and that no act of Hale, either before or after his conveyance to Tyler, can, on any ground, defeat the tenants' title.

The conclusion is, that as the demandant's grantors were dis-

seized when they undertook to convey their rights to him, their deeds were inoperative to convey any estate to him, and his title therefore wholly fails.

*Demandant nonsuit*