The President and Directors of the Manhattan Company *against* Lydig.

THIS was an action of *assumpsit* for money had and received to the use of the plaintiff; being the sum of 1,452 dollars, paid by the plaintiffs to the checks or drafts of the defendant, between the 19th *March* and the 20th *April*, 1803, inclusive. The cause was tried at the *New-York* sittings, in *November*, 1806, before Mr. Justice *Tompkins*.

The plaintiffs proved the payment of the checks in question, and the deficiency in the deposits of the defendant, during the period above mentioned. From the regulations of the bank, as to the mode of transacting business, it appeared, that it is the duty of a clerk in the bank, called the *receiving teller*, to receive all the monies deposited in the bank; and when received, to enter the amount, with the name of the person for whom it is received, in a book, called the *cash book*. In case of the absence or sickness of the *receiving teller*, some other clerk is appointed to act, temporarily, in his place; and occasionally, when there is an unusual press of business, some other clerk acts as an assistant teller; but there is a particular place in the bank appropriated for the teller, where all money is regularly paid, and the person who acts as teller is to receive deposits at that place only. It is the duty of the *book-keeper*, to keep the ledger only, and to post from the cash book, kept by the teller, all entries of cash into the ledger. He has no right to re-

Where an account has been settled, though it cannot be opened generally, yet it may be opened for the purpose of falsifying particular items.

A clerk in the bank, who acted as a book-keeper, and whose particular duty it was to keep the ledger, into which the entries are copied from the *teller's* cash book, received money from A. who was a dealer with the bank, for the purpose of having the same deposited in the bank, and which he entered in the ledger, and, afterwards, into the dealer's bank book, but which was not received by the teller, or entered in his cash book, and was supposed to be embezzled with other monies by the clerk who absconded; it was held, that the clerk, in making the deposit, was the agent of A. and not of

the bank; and that A. must be answerable for the *deficit* in the deposit.

Whether due diligence was used by the bank, to detect the fraud of the clerk, is a question of law; if the bank take the usual and customary mode, to detect the frauds or mistakes of its clerks, it will be sufficient evidence of due diligence.

If a dealer with the bank, send his bank book, with the money to be deposited, and the clerk enters the amount to his credit, in the bank book, at the time the deposit is made, it is conclusive on the bank; *aliter*, if the deposit is first made, and the entry is afterwards copied from the ledger into the dealer's bank book.

ceive money; but there have been instances, where a book-keeper, on account of a great pressure of business, has assisted the receiving teller, or supplied his place, during his absence or sickness.

Each dealer with the bank, is furnished with a small book, commonly called his bank book, in which his accounts with the bank are stated; and when any deposit is to be made, it is regular to send this bank book, with the deposit, and the person acting as receiving teller, enters the amount of the deposit in the book, at the time it is made. Sometimes, however, this little bank book is not sent, and when that happens, the book is afterwards, written up, and the entries of the deposits made from the ledger; in which case the entries always appear in the hand-writing of the book-keeper, whose duty it is to write up and balance the dealer's bank book. This book, and the money to be deposited, are frequently sent by the clerks of the persons dealing with the bank. The regulations above mentioned are established by the bank, of which no special notice is given to those dealing with it.

It appeared that one *B. Brower* was a book-keeper in the bank, during the above periods; and that, in that capacity, he kept the ledger A. to L. inclusive, in which was the account between the defendant and the bank. On the 19th *March*, 1803, there appeared to be a credit in the ledger to the defendant, of 882 dollars and 75 cents, and which credit was made in the hand-writing of *Brower*; but the sum was not entered in the cash book, kept by the teller. On the 21st of *March*, 1803, a similar credit appeared in the ledger, in the hand-writing of *Brower*, for 75 dollars and 50 cents, which was not entered in the teller's cash book. On the 20th *July*, following, there was a similar entry in the ledger, in the same hand-writing, of the sum of 293 dollars and 17 cents. On the 19th and 21st *March*, the receiving teller was at his place in the

bank, and he testified, that the sums of 882 dollars and 75 cents, and 75 dollars and 50 cents, credited to the defendant in the ledger, were not received by him, nor, to his knowledge, by any other clerk in the bank, nor were they entered in the cash book.

On the 20th *July*, one *Jones*, since deceased, acted in the place of the teller; and the cash book of that day, did not contain any entry of the said sum of 293 dollars and 75 cents; but all the money delivered over by him, as received on that day, on being counted, at the closing of the bank, corresponded with the entries in the cash book. On the 11th *May*, 1803, the defendant was credited in the ledger kept by *Brower*, with the sum of 900 dollars; but the sum deposited, and entered in the cash book, was 800 dollars only; and on the 13th *June*, a credit was entered to the defendant, in the same ledger, for 190 dollars 87 cents, when the sum deposited and entered in the cash book, was only 90 dollars and 87 cents.

All the sums above mentioned, were entered in the bank book of the defendant, produced at the trial, in the hand-writing of *Brower;* and the account, in the same book, had been balanced three times, between the 19th *March* and the 20th *July*, 1803, to wit, on the 22d *March*, the 20th *May*, and the 27th *June*: once by a clerk, who acted for *Brower*, in his absence, and twice by *Brower* himself, whose duty it was, as keeper of the ledger, to cast up, and balance the books. In doing this the practice is to transcribe from the debtor side of the ledger, all sums drawn for by checks of the dealer, who is credited with all sums not before entered in his bank book.

This bank book is the only document, or evidence that the dealer with the bank has of his transactions with the bank; it is a request of the bank, that it should be sent often to be written up and balanced; and the dealer accordingly sends his book to the bank, where it remains until it is written up and balanced, by the clerks of

ALBANY,
August, 1809.

Manhattan
Company
v.
Lydig.

the bank. This is done by comparing it with the ledger, inserting all the debts and credits, and stating the balance as it appears in the ledger ; and when thus balanced, it is returned by the bank, to the dealer.

When the bank book was written up, in the absence of *Brower*, it happened, in the following manner : The plaintiffs sent a notice to the defendant, that his account was overdrawn ; and the deficiency claimed by the plaintiffs was immediately paid ; this was on the 27th *June*, 1803.

A dealer's bank book, belonging to *R. G.* was produced, in which were several entries of sums deposited to his credit, in the hand-writing of *Brower*, on the day when the receiving teller appeared to be in his place in the bank, and which deposits were also entered in the cash book. It happened that once, on the 7th *December*, 1802, · an entry was made in the same bank book, of a deposit of 150 dollars, to the credit of the same dealer, in the hand-writing of *Brower*, and which was entered in the ledger ; but no entry thereof was made in the receiving teller's cash book, though it appeared that the teller acted in his place on that day, and not *Brower*.

It appeared that *Brower* eloped from the city on the 17th *August*, 1803 ; having fraudulently taken money from the bank, to the amount of 10,000 dollars.

According to the regulations of the bank, it is their uniform practice, in the course of the day, or during the next day, to compare the entries in the cash book, with the entries in the ledger ; and this is done by the receiving teller, and the clerk who keeps the ledger. Once a month a committee of the directors examine the cash in the bank, to see that it corresponds with the cash account, in the cash ledger, rendered by the book-keepers, each of whom renders a balance-sheet, which is compared with the cash account. Prior to the elopement of *Brower*, these accounts corresponded ; but when his

fraud was discovered, it appeared, that in order to cover the fraud, he fabricated false balance sheets, corresponding with the entries in the cash book, but not with those in the ledger.

Sometime after *Brower's* elopement, the defendant told a witness, that he had received a letter from *Brower*, informing him, that he, *Brower*, had committed a fraud, in keeping the defendant's account with the bank. On this intimation, the whole account was critically examined; and on such examination, the fraudulent entries above stated, were discovered. By a similar course of examination, which, however, was not usual, the bank might have detected the fraud at any time.

After this examination, the defendant was informed of the result, who answered, that he had employed *Brower*, as a writer, to post his books. At first he wrote in the evening, but he afterwards came to write in the morning, before 10 o'clock, when the bank opened; that when *Brower* left the defendant's house, to go to the bank, he would frequently ask him if he had any money or notes to send for deposit; that he sent money by him to be deposited, and that he might have been ruined; which the witness understood, to refer to his intrusting *Brower* to carry money to the bank. It appeared that *Brower* had been formerly a clerk to the defendant, and was recommended by him to the bank, and was employed on that recommendation. *Brower* then sustained a good character, and was a confidential clerk in the bank. It was agreed that the defendant was a man of fair character, and wholly ignorant of any fraud committed by *Brower*, until informed by the above-mentioned letter. When *Brower* was admitted as a clerk in the bank, he gave a bond, with surety, for his good conduct, in the sum of 2,000 dollars, which bond is in force,

The defendant had said to one of the witnesses, that he could not account for the errors in his bank book, unless it was from his occasionally intrusting *Brower* to carry money to the bank, and which he never deposited.

It appeared that *Brower* lodged a note in the bank, for collection, given by *J. H.* to the defendant, for 208 dollars, which was indorsed by the defendant, and afterwards by *Brower;* that the note was entered in the little bank book, in the name of the defendant, for collection, in *Brower's* hand-writing; and when it became payable, it was withdrawn by the defendant, and delivered by *Brower* to a clerk of the defendant.

After the bank had received intimation of the frauds, committed by *Brower*, in the account of the defendant, the cashier made several alterations, in red ink, in the defendant's bank book, which had been left by him, denoting the entries to which the bank objected, as erroneous, and returned the book, so altered, to the defendant; but this was done without his knowledge or authority.

The judge told the jury, that the bank was not chargeable by the dealer, unless the sums for which the credit was claimed, were delivered to the receiving teller, or to some person acting in his stead, or as his assistant, or came into the coffers of the bank, or unless they had become chargeable in this case, in consequence of the fraud, or improper conduct of *Brower*, as their book-keeper; and he submitted to the jury, to determine, first, whether the money for which the credit was claimed by the defendant, had been delivered to the proper clerk, or received into the bank, in which case the plaintiffs ought not to recover; and, secondly, if the money had been so received, whether the bank had used due diligence in detecting and rectifying the frauds and mistakes of *Brower*, their book-keeper, in the accounts balanced and returned by the plaintiffs to the defendant;

If they had used due diligence, the loss must be sustained by the defendant, and the verdict ought to be for the plaintiffs, otherwise, the loss ought to be borne by the plaintiffs, and a verdict be given for the defendant.

The jury found a verdict for the defendant. A motion was made to set aside the verdict, and for a new trial, on the following grounds:

1. Because the money now claimed, by the plaintiffs, was never paid into the bank by the defendant.

2. Because the plaintiffs are not responsible for the fraud or misconduct of *Brower*, and the payments, if any were made to *Brower*, were made at the peril of the defendant.

3. For the misdirection of the judge.

4. Because the verdict is against law and evidence.

*Hoffman*, for the plaintiffs. 1. The mode of transacting business with the plaintiffs, is the same as is practised in the other banks of the *United States*, and is well known to all persons dealing with the bank. The teller is known to be the person authorised to receive all deposits. The book-keeper is a distinct clerk, whose sole and proper duty it is to post the entries made in the teller's cash book. The proof is conclusive, on this point, at least for the sum of 987 dollars; for that amount was not paid at the proper and appointed place. If the payment was irregular, it is incumbent on the defendant to prove that the money actually came into the hands of the plaintiffs. The law will not presume that it came into the coffers of the bank, unless it was paid at the proper place, in the usual and regular mode. There ought, therefore, to have been a verdict for the plaintiffs, at least for the amount of 987 dollars. And as to the evidence of the payment of the 293 dollars, there is not sufficient proof of a payment, to warrant the finding of the jury.

ALBANY,
August, 1809.

Manhattan
Company
v.
Lydig.

2. *Brower* was the agent of the bank, only as a book-keeper, except on special occasions, when he was intrusted to receive money in the place of the teller. In all the instances in which he received money from the defendant to deposit in the bank, he was the agent of the defendant, not of the plaintiffs; for his fraud, therefore, in relation to such sums, the defendant, not the plaintiffs, must be answerable. Again, the monies delivered by the defendant to *Brower*, were not received by him in the banking room. The only sum for which there is any evidence of its having been paid in the bank is 293 dollars.

3. The charge of the judge was not correct. There was no want of due diligence on the part of the plaintiffs, who proceeded according to the usual course in such cases. But if the plaintiffs are not answerable for the fraud of *Brower*, who, in regard to the money received, was the agent of the defendant, then the question about due diligence cannot arise. Again, whether due diligence or not, is a question of law,* and not of fact, and, therefore, not proper to be left to the jury. In a case of fraud, the doctrine about due diligence does not apply; but if the fraud be proved, the law will afford a remedy, notwithstanding the lapse of time. The most plausible objection is, that by suffering the book to be balanced three times, the bank adopted the acts of *Brower*. But the original fraud was in *Brower*, the agent of the defendant, and the balancing of the book was a continuation of that fraud.

Though, generally speaking, a settled account cannot be opened, yet it may be, where you can lay your finger on the errors, or items falsely charged. The rule is the same in equity as in law. If this may be done as to a mistake, *a fortiori*, it ought to be allowed, where there is fraud.†

* 1 *Bos. & Pull.* 389.

† 2 *Atk.* 113. 119. 2 *Bro. C. C.* 62. 3 *Anstr.* 769. 4 *Ves. jun.* 118. *For. Ex. Rep.* 157. 6 *Ves. jun.* 485. 1 *Salk.* 282.

*S. Jones*, jun. and *J. Radcliff*, contra. *Brower* was the general and confidential agent of the plaintiffs, who are responsible for the fidelity and honesty of the clerks they employ in the business of the bank. When the question arises, which of two innocent persons must bear a loss, by the misconduct of a third person, it must be borne by him who gave the trust and confidence. The rules relative to the mode of doing business in the bank, were made for their own convenience and security, and cannot affect or vary the rights of the dealers with the bank; but it appears that the plaintiffs allowed of deviations from these rules, at various times, by permitting a book-keeper or other clerk, to assist the teller, or to act in his place. It is proved that *Brower* was permitted to act as *teller*, and to receive money brought to be deposited. Having allowed him once to act in that capacity, the plaintiffs can never be permitted, afterwards, to object that he was not a teller, or not authorised to receive money.

The general principle is, that the bank must be responsible for the acts of their clerks and agents, unless they publish to the world, that particular clerks are authorised and entrusted by them, to do certain specific things; for otherwise, how are strangers, dealing with the bank, to know whether a particular clerk is acting within the scope of his authority or not? There is no evidence, except as to two sums, that the defendant ever trusted *Brower* to carry money to the bank, to be deposited. In those instances, he was the agent of the defendant, no farther than to carry the money *to* the bank; when *in* the bank he was the agent of the plaintiffs, and it was there he committed the fraud.

We do not deny that a settled account may be opened, in case of mistake or fraud, where such mistake or fraud is imputable to the person against whom the relief is sought, by opening the accounts; but that is not the case here.

The dealer's bank book, as it is called, is kept by the plaintiffs and their agents. If *Brower* was not their agent to make the original entries, he was, undeniably, their agent in balancing this book, from time to time, because, that is admitted to be the peculiar duty of the book-keeper. The settlements in this bank book, are the only evidence allowed or given to the defendant, of the state of his account; and having been made by the proper agent of the plaintiffs, must be considered as conclusive against them, unless they can show a fraud in the defendant himself. These settlements deliberately made, from time to time, are an adoption of the acts of *Brower*, who was the regular agent of the plaintiffs, in keeping the account, and comparing it with the ledger; and any frauds committed by him in that capacity, must undoubtedly be charged to the bank. Again, the plaintiffs took security for the fidelity of *Brower*, as their agent; they ought, therefore, to bear the loss arising from his misconduct, and look to their security for an indemnity.

Due diligence or not, is a question of law, in relation to certain commercial transactions; but generally, it is a mixed question of law and fact. The judge did no more than give his opinion as to the law, and then leave it to the jury to find the fact; if they found that the plaintiff had been remiss and negligent, then by law, they ought to bear the loss.

*T. A. Emmet*, in reply. The true question is, whether the money was deposited in the bank or not. This is a principal fact to be proved, and which has been assumed by the counsel for the defendant. The evidence of the fact, is an entry in the cash book, and an entry in the ledger, which is no more than a copy of the cash book. If the ledger is not an exact copy of the cash book, it is so far incorrect. If the defendant had sent his bank book with the money, and had demanded the book of

*Brower*, he would have been able to have detected the fraud immediately. The original entry by the teller in the bank book, is no doubt conclusive against the bank; but where the bank book is not sent with the money, an entry is made in the teller's cash book, which is copied into the ledger; and when the dealer's bank-book is, afterwards, sent to the bank to be written up, these entries are copied from the ledger into it, by the clerk who keeps the ledger. They are nothing more than copies from a copy; they are no evidence against the plaintiffs that deposits were made.

The presumption is, that the money was never deposited, otherwise, the receiving teller would have known it. If *Brower* made false entries in the ledger, when no money, in fact, was deposited, such entries can never give a right against the bank. It is the original entry only in the dealer's bank book, that gives him a right against the bank.

I deny the principle, that the bank is answerable for all the acts of their clerks *in* the bank; they are responsible only for such acts as are done by them, in their proper capacities, or places for which they are appointed. As well might the bank be made responsible for money delivered to the door-keeper, to be deposited. This is not a case where two persons are equally losers. The defendant is a gainer by the fraud of *Brower.*

SPENCER, J. delivered the opinion of the court. If the defendant's account with the bank be considered as balanced by the officers of the bank having competent authority for that purpose, as it appears to me it must; still the cases of *Vernon* v. *Vaudry*,\* and *Brownell* v. *Brownell*,† are authorities for saying, that though the whole account cannot be opened after such a lapse of time, yet that the particular items may be falsified.

This case turns on the point, whether in respect to some of the false credits given to the defendant in the

\* 2 *Atk.* 119.

† 2 *Bro. C. C.* 62.

ALBANY,
August, 1809.

Manhattan
Company
v.
Lydig.

ledger, and from thence transcribed into the defendant's bank book, *Brower* did not act as the agent of the defendant in making the deposits ; and whether, as such, he was not enabled to commit the frauds, of which the plaintiffs complain.

It is certain that the defendant did send money by *Brower*, at several times, to make deposits, and if it can be ascertained, that in discharge of that trust, he falsely obtained credits for the defendant beyond the amount deposited, so far I think the defendant liable. *Brower* was the servant of the plaintiffs, when in their employ, and in their office ; and for acts there done, the plaintiffs are answerable ;* but for acts not done in execution of the authority given him by the plaintiffs, they are not chargeable. In making deposits for the defendant, *Brower* acted, not as the servant of the plaintiffs, but as the agent of the defendant, and the defendant would be answerable for any *deficit* in the deposits, in the same manner as though he himself had been guilty of a fraud in making them.

* 1 *Salk.* 228.

The judge fairly submitted it to the jury to decide, whether the money for which credit was claimed by *Lydig*, had been delivered, or received into the bank. If it had, he observed, that the plaintiffs ought not to recover. This part of the charge appears to me correct. The second position stated to the jury was, that if the money had not been so received, then whether the bank used due and proper diligence, in detecting and rectifying the frauds or mistakes of *Brower*, their book-keeper, in the accounts balanced and rendered to the defendant, would be a material inquiry ; and if the plaintiffs had used due diligence, the loss must be sustained by the defendant, and the verdict ought to be for the plaintiffs ; but if they had not, then the loss ought to fall on them, and the verdict ought to be for the defendant.

The latter position, I think incorrect in this, that the question of due diligence was left at large to the jury,

without any opinion expressed by the judge, and because I perceive no grounds on which to found the charge of a want of due diligence on the part of the bank.   The examinations, at the bank, by the committee of directors, were in the usual way; and the frauds practised by *Brower*, eluded detection, by his fabrication of a false balance sheet.   It is not for the court to point out the mode banks are to pursue to detect frauds; but if they take the usual and uniform method, adopted not only by this, but I presume by other banks, they cannot be subjected to the charge of negligence.   There is no proof, that the other banking institutions pursue a different method; and I therefore think it fair to conclude, they do not.

I have said, that particular errors in accounts may be inquired into, and rectified, though the whole account may not be liable to be opened, with respect to accounts kept by individuals with a bank; but in my mind there is this exception; if the dealer's book accompany the deposits, and the credit be then given, when the deposit is made, it becomes an original entry, and would be conclusive on the bank; if, however, the book is sent to be written up afterwards, it is not an original entry, and may be examined into.

The result of my opinion is, that the jury were misdirected on the point of negligence on the part of the plaintiffs.   It should not have been submitted to them as a question of fact; and, as it was so submitted, their verdict, for aught we know, turned on that point, and for that reason, there ought to be a new trial.

The court are, accordingly, of opinion, that there must be a new trial, with costs to abide the event of the suit.

New trial granted.