[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 70 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 72 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 74 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 75 
The jury, by their verdict, pronounced the checks upon which the money in dispute was paid to be forgeries, and it is not claimed that the intestate, Weisser, after he had personal knowledge of the facts, did any act by which he made them his own. After the forgeries were discovered by him he did not in any manner recognize Harlin, the forger, as his agent for drawing the checks. The original payment of the checks by the bank was in their own wrong, and if paid to an innocent holder the money could not be recovered back. (Price v. Neale, 3 Burr.,
1354; Goddard v. Merchants' Bank, 4 Comst., 147; Bank ofCommerce v. Union Bank, 3 id., 230.) The defence in the action is based upon the alleged negligence of Weisser in omitting to examine his bank-book after it had been settled and balanced by the bank and returned with the canceled vouchers, and to compare them with his check-book, by which the forgeries might have been earlier detected. But I can find no principle upon which this defence can be sustained. First. The intestate was not, within any rule of law, estopped from alleging that the signatures of the checks were unauthorized. 1. He did no act to give currency to the checks. 2. He did no act with a view to influence the conduct of the defendants, or by which they were influenced and induced to part with their property or change their position. (Dezell v. Odell, 3 Hill, 215; Pickard v.Sears, 6 Adol. Ell., 469; Canal Bank v. Bank *Page 76 of Albany, 1 Hill, 287.) Second. The most that can be claimed is, that the "writing up" of the bank-book, debiting in it the forged checks and returning the book with the vouchers, was the statement of an account by the bank, and that Weisser, by retaining the account after a reasonable time for its examination had elapsed, without objection, must be deemed to have acquiesced in it and admitted it to be correct, and is equally bound by it as by an account stated. This is undoubtedly the result of his omission personally to examine his account and take seasonable objections to improper items. Still, inasmuch as the defendant has not, by the silence of Weisser, been induced to take any action or lost any rights, the only effect of this is to cast the burthen of proof upon Weisser and his representatives to show fraud, error or mistake in the account. It is not conclusive, but merely prima facie evidence of the dealings between the parties. (Manhattan Company v. Lydig, 4 John., 377;Sherman v. Sherman, 2 Vern., 276; Philips v. Belden, 1Edw. Ch. R., 1; Kinsman v. Barker, 14 Vesey, 579;Bullock v. Boyd, 2 Edw. Ch. R., 293; Barrow v.Rhinelander, 1 John. Ch. R., 550.) At law, as well as in equity, a settled account may be impeached by proof of unfairness or mistakes in law or fact. (Perkins v. Hart, 11 Wheat.,
237; 1 Story's Eq. Jur., §§ 523, 528, 529.) The acquiescence in the account as stated can be of no more binding force than an express admission of the genuineness of the signatures to the forged checks would have been, and yet such admission, made in good faith, would not have concluded the party unless third persons had been induced to give credit to the checks and part with value upon the faith of such admission. (Hall v. Huse,
10 Mass., 40; Salem Bank v. Gloucester Bank, 17 Mass.,
1.) Third. It is said that Harlin settled the account with the bank as the agent of Weisser, and that the agent having knowledge of the forgeries and that the charges in dispute were based upon such forgeries, the principal was affected by the knowledge of the agent and must be deemed *Page 77 
to have acted in person, with full knowledge of all the facts, and thus to have acquiesced in the payment of the forged checks from his funds. The principle that notice to an agent is notice to the principal is quite familiar, but is only applicable to cases in which the agent is acting in the course of his employment. Were it otherwise, and did it extend to acts unauthorized and outside of the employment, whether trespasses or even felonies, the master might be made responsible for all acts, whether tortious or otherwise, done by his servant while in his employ or acting professedly in his behalf, if he did not act at once by disclaiming the authority. The servant would necessarily have knowledge of his own wrongful act, and within the rule sought to be applied the knowledge of the servant would be that of his master; and if the latter, having knowledge, should not object, he might be deemed to acquiesce. He would thus, by a legal fiction, be charged with the tortious, fraudulent or even felonious act of his servant. This is not the law. (Foster v.Essex Bank, 17 Mass., 478; Lewis v. Read, 13 Mees. Wels., 834; Lyons v. Martin, 8 Adol. Ell., 512;Schmidt v. Blood, 9 Wend., 268; Vanderbilt v. TheRichmond Turnpike Company, 2 Comst., 479.) Had Harlin in fact settled with the bank, his acts in respect to the forged papers would not have bound Weisser. The allowance of the amounts would have been unauthorized, and but a continuation and carrying out of his first offence, and no more obligatory upon his employer than the receipt of the money in the first instance at the counter of the bank. Bankers are presumed to know the signatures of their customers, and they pay checks purporting to be drawn by them at their peril. If they do not know them to be genuine they must take time to ascertain. The debit of the amounts of these checks, not being authorized by the checks themselves, cannot be sustained upon the authority of Harlin in the settlement of the account. There being no drafts or authority from Weisser, the bank had but the verbal assent *Page 78 
of Harlin to charge upon settlement these amounts to the account of Weisser, and there is no pretence that Harlin was supposed to have authority to bind Weisser to that extent or in that manner.
But there was no settlement with the bank except such as resulted from the acquiescence of the plaintiffs' intestate in the account by his silence. The examination of the account by Harlin was not a transaction with the bank, or in which they had any interest or of which they had any knowledge. It was a matter between Weisser and his clerk for the information of the former, and whether faithfully or honestly done is not material to the defendant. Weisser did not obtain the desired information, but is in no worse situation, and the defendant is in no better, than if no examination had been attempted, and in such case it would not have been claimed that he would have been concluded by the account and his omission to examine it. The business was, in truth, transacted in the usual and ordinary way, and no negligence can attach to Weisser in the premises. In TheManhattan Company v. Lydig (4 John., 377), a book-keeper in the bank, having charge of the ledger and whose business it was to copy entries from the teller's cash-book, received money from a customer to deposit, entered the account in the ledger and afterwards in the dealer's cash-book, but embezzled the money. The bank-book of the dealer was balanced and settled three times, twice by the dishonest book-keeper and once by another clerk, after the credits had been entered therein and before the fraud was discovered, although a critical examination of the books of the bank would have disclosed the fraud at any time. It was held that the bank was not liable, but that the depositor must suffer the loss, and that there was no want of diligence on the part of the bank. If a settlement with the defendant can be predicated upon the act of Harlin in examining the bank-book of Weisser, then the bank, in the case cited, should have been concluded by the acts of its clerks in stating the account *Page 79 
with its customers. Mere lapse of time in the abstract, however long, will not bar the right of the party to allege the forgery, provided he does it within a reasonable time after it is discovered. (Canal Bank v. Bank of Albany, 1 Hill, 287.) Lapse of time between the payment of the checks and the discovery of the forgeries is all there is upon which the defendant can rely in this action, and that cannot avail him as a defence to the action. I see no reason why the judgment of the supreme court at the trial term, for the full amount of the verdict, should not have been affirmed; and as the relinquishment of a part of the verdict by the plaintiffs, the whole of which they were entitled to retain, whether done upon their own motion or otherwise, cannot prejudice the defendant, the judgment below should be affirmed.