The plaintiffs had a verdict on the trial for $1896.99. Upon the defendant's appeal to the general term of the superior court, in which the suit was pending, a new trial was ordered unless the plaintiffs would consent that the damages should be reduced to $1385.50; upon such consent, a new trial was to be denied without costs of the appeal. The plaintiffs consented to the deduction, and a new trial was accordingly denied. The defendant has appealed to this court, and now insists that, as the general term decided that an error had been committed upon the trial, and the case was there upon a bill of exceptions, and the damages were assessed generally, the court were bound to grant a new trial absolutely. The record affords no means by which we could determine what grounds or what data were adopted by the court below in fixing the amount of the deduction to which the plaintiffs were required to consent to avoid a new trial; and we should probably feel compelled on this ground alone to order a new trial, had not the plaintiffs furnished a complete answer to the objection, by maintaining, as we think they have successfully maintained, that the ruling of the court below, at the trial, was correct. Weisser, the *Page 80 
plaintiffs' intestate, had for a long period kept a bank account with the defendant. Between the 28th of January, 1838, and the time of his death, the 28th of August, 1849, he had deposited with the bank, to his own credit, and received credit for $296,601.86. During the same period, the bank had paid out, upon checks purporting to be signed by him, $295,451.36. Of these checks, which were several hundred in number, fifty-one, amounting in all to $589.20, were not signed by Weisser or by his procuration, but were forgeries of his name. If the case stopped here, the plaintiffs would clearly be entitled to recover the whole amount claimed. (Hall v. Fuller, 5 Barn. Cress.,
750.) It, however, further appears that, during the period above mentioned, Weisser's bank-book was several times written up and balanced by the bank; that on each of those occasions all the checks which the bank had paid, as drawn by Weisser, were charged to him in his bank-book, and that all such checks, as well the forged checks as the genuine, were returned with the balanced bank-book. All Weisser's bank business was transacted by his clerk, one Harlin, who, on each of the occasions referred to, received the balanced bank-book and the returned checks from the bank. It likewise appeared that Weisser did not examine the returned checks and the statement of the accounts, as shown in the balanced bank-book, but directed Harlin to make such examination, and that attending to that part of Weisser's business was in the course of Harlin's regular employment. It appeared that twelve of the forged checks were paid to other banks, by which they were presented, and it did not appear to whom any of the other forged checks were paid. The forgeries were committed by Harlin, in whom Weisser reposed entire confidence. As soon as Weisser discovered that there was something wrong about his bank account, he communicated it to the bank, as he did also the fact that forgeries had been committed, as soon as he discovered them. Upon the discovery of the forgeries, Harlin absconded, and the fifty-one *Page 81 
forged checks were found in his trunk at his rooms. None of them were entered in Weisser's check-book. Upon this state of facts, the defendant insisted at the trial that Weisser, by neglecting to examine the checks and bank account upon the return of the bank-book, written up and balanced by the bank, had adopted the checks as his own, and that by reason of his negligence in that respect the plaintiffs could not recover from the bank the amount of the forged checks.
The plaintiffs' case may be considered: First, as to those checks which were paid prior to the first balancing of the bank-book and return of checks; and, Secondly, as to the checks afterwards presented and paid. As to the first class of checks, the plaintiffs have shown the money of their intestate in the defendant's hands; and the defendant, in discharge of that liability, wholly fails to show any order or authority of Weisser to make payment upon the checks in question. They were not instruments upon which, even if genuine, the bank could ever have maintained any action against Weisser. They did not, upon their face, import any obligation from Weisser to the bank. When they were returned to him they were not presented to him for payment, for they did not import any promise by him to pay, but as vouchers for payments already made and charged to Weisser in the bank-book. The entry of debits for payments made in a bank-book and striking a balance is undoubtedly a statement of the account, and the delivery of it to the dealer and his retention of it without objection, as in other cases of accounts rendered, gives to this statement of accounts the character of a stated account. But a stated account is liable to be opened by evidence of fraud or of mistake; and when the payments represented by the checks in question were sworn by Weisser's representatives not to have been made to him or by his order or authority, the proof of payment afforded by the stated account was overthrown and Weisser's right to the money remained unaffected. The second class of checks are subject to precisely the *Page 82 
same observations; and as to the amount claimed by the defendant on account of the payment of them, the defendant cannot retain it unless a right has accrued to the defendant from Weisser's not having detected the forged checks returned upon the earlier balancing of his bank-book under the circumstances before stated. That these do not amount to a ratification of Harlin's forging his name is plain, for there can, ordinarily, be no ratification of that of which a party is ignorant. Ratification implies at least a knowledge that there is or may be something to ratify. The circumstances must then have effect, if they have any effect, upon the ground of negligence in a duty which the owed to the bank, whereby they have been misled and induced to pay the checks in question. The most which can reasonably be said is, that if Weisser had detected the forgeries and communicated the fact to the bank upon the return of the checks upon the first balance of his bank-book, the bank would have been stimulated to increased vigilance in the discharge of a duty which they owed, not to Weisser but to themselves, for it was not Weisser's money which they paid out but their own. They were indebted to Weisser generally for money in their hands, and they could only discharge that indebtedness by payment to him or by his authority. The duty and the risk of ascertaining, when they were about to pay out money, that it was being paid upon competent authority, was upon them, just as in all other cases it is upon a debtor to see to it that he pays his creditor and not some one else without the creditor's authority. Upon the mere ground of the forgery there was no more propriety in charging the money paid to Weisser than if anybody else's name had been forged, or than if payments on some one else's genuine checks had been charged to him.
The defendant's proposition, when closely examined, is not that Weisser has done anything which facilitated or contributed to a fraud upon the bank, but that he has omitted *Page 83 
to do that which, if he had done it, would have enabled him to put them on their guard against frauds with which the connection of his name was only an accidental circumstance, to which no act of his had in any degree contributed and against which he was under no peculiar obligation to guard them. Whatever loss the bank has sustained it has suffered from its own negligence or want of skill in a matter as to which, in the first instance, it and it only was bound to exercise skill and diligence. To this loss no act of Weisser has contributed. He was guilty of no bad faith. He has violated no duty which he owed to the bank and is in no way responsible. (Manhattan Company v. Lydig, 4John., 377; Smith v. Mercer, 6 Taunt., 76; Young v.Grote, 4 Bing., 253; Johnson v. Windle, 3 Bing. N.C.,
225; Bank of Commerce v. Union Bank, 3 Comst., 230; CanalBank v. Bank of Albany, 1 Hill, 287.) He had a right to assume that the bank had discharged its own duty to itself (if indeed he was bound to make any assumption upon the subject), and was not bound to conceive it possible that the bank had charged him with money which had not been paid upon his order. He was under no contract with the bank to examine with diligence his returned checks and bank-book. In contemplation of law the book was balanced and the checks returned for his protection, not for theirs, and when he failed to examine it the whole consequence was that the burthen of proof was shifted. He became bound to show that the account was wrongly stated. This right he preserved so long as his claim was not barred by the statute of limitations. The case completely negatives any imputation of participation by Weisser in the fraud perpetrated upon the bank. That would have introduced a new element into the case and would have led to a different result.
All the judges concurred.
Judgment affirmed. *Page 84