Allen, J.
The jury, by their verdict, pronounced the checks upon which the money in dispute was paid to be forgeries, and it is not claimed that the intestate, Weisser, after he had personal knowledge of the facts, did any act by which he made them his own. After the forgeries were discovered by him he did not in any manner recognize Harlin, the forger, as his agent for drawing the checks. The original payment of the checks by the bank was in their own wrong, and if paid to an innocent holder the! money could not be recovered back. (Price v. Neale, 3 Burr., 1354; Goddard v. Merchants' Bank, 4 Comst., 147; Bank of Commerce v. Union Bank, 3 id., 230.) The defence in the action is based upon the alleged negligence of Weisser in omitting to examine his bank-book after it had been settled and balanced by the bank and returned with the canceled vouchers, and to compare them with his checkbook, by which the forgeries might have been earlier detected. But I can find no principle upon which this defence can be sustained. First. The intestate was not, within any rule of law, estopped from alleging that the signatures of the checks were unauthorized. 1. He did no act to give currency to the checks. 2. He did no act with a view to influence the conduct of the defendants, or by which they were influenced and induced to part with their pro perty or change their position. (Dezell v. Odell, 3 Hill, 215; Pickard v. Sears, 6 Adol. & Ell., 469; Canal Bank v. Bank *76 of Albany, 1 Hill, 287.) Second. The most that can be claimed is, that the “ writing np ” of the bank-book, debiting in it the forged checks and returning the book with the vouchers, was the statement of an account by the bank, and that Weisser, by retaining the account after a reasonable time for its examination had elapsed, without objection, must be deemed to have acquiesced in it and admitted it to be correct, and is equally bound by it as by an account stated. This is undoubtedly the result of his omission personally to examine his account and take seasonable objections to improper items. Still, inasmuch as the defendant has not, by the silence of Weisser, been induced to take any action or lost any rights, the only effect of this is to cast the burthen of proof upon Weisser and his representatives to show fraud, error or mistake in the account. It is not conclusive, but merely prima facie evidence of the dealings between the parties. (Manhattan Company v. Lydig, 4 John., 377; Sherman v. Sherman, 2 Vern., 276; Philips v. Belden, 1 Edw. Ch. R., 1; Kinsman v. Barker, 14 Vesey, 579; Bullock v. Boyd, 2 Edw. Ch. R., 293; Barrow v. Rhinelander, 1 John. Ch. R., 550.) At law, as well as in equity, a settled account may be impeached by proof of unfairness or mistakes in law or fact. (Perkins v. Hart, 11 Wheat., 237; 1 Story’s Eq. Jur., §§ 523, 528, 529.) The acquiescence in the account as stated can be of no more binding force than an express admission of the genuineness of the signatures to the forged checks would have been, and yet such admission, made in good faith, would not have concluded the party unless third persons had been induced to give credit to the checks and part with value upon the faith of such admission. (Hall v. Huse, 10 Mass., 40; Salem Bank v. Gloucester Bank, 17 Mass., 1.) Third. It is said that Harlin settled the account with the bank as the agent of Weisser, and that the- agent having knowledge of the forgeries and that the charges in dispute were based upon such forgeries, the principal was affected by the knowledge of the agent and must be deemed *77 to have acted in person, with full knowledge of all the facts, and thus to have acquiesced in the payment of the forged checks from his funds. The principle that notice to an agent is notice to the principal is quite familiar, but is only applicable to cases in which the agent is acting in the course of his employment. Were it otherwise, and did it extend to acts unauthorized and outside of the employment, whether trespasses or even felonies, the master might be made responsible for all acts, whether tortious or otherwise, done by his servant while in his employ or acting professedly in his behalf, if he did not act at once by disclaiming the authority. The servant would necessarily have knowledge of his own wrongful act, and within the rule sought to be applied the knowledge of the servant would be that of his master; and if the latter, having knowledge, should not object, he might be deemed to acquiesce. He would thus, by a legal fiction, be charged with the tortious, fraudulent or even felonious act of his servant. This is not the law. (Foster v. Essex Bank, 17 Mass., 478; Lewis v. Read, 13 Mees. & Wels., 834; Lyons v. Martin, 8 Adol. & Ell., 512; Schmidt v. Blood, 9 Wend., 268; Vanderbilt v. The Richmond Turnpike Company, 2 Comst., 479.) Had Harlin in fact settled with the bank, his acts in respect to the forged papers would not have bound Weisser. The allowance of the amounts would have been unauthorized, and but a continuation and carrying out of his first offence, and no more obligatory upon his employer than the receipt of the money in the first instance at the counter of the bank. Bankers are presumed to know the signatures of their customers, and they pay checks purporting to be drawn by them at their peril. If they do not know them to be genuine they must take time to ascertain. The debit of the amounts of these checks, not being authorized by the checks themselves, cannot be sustained upon the authority of Harlin in the settlement of the account. There being no drafts or authority from Wfeisser, the bank had but the verbal assent *78 of Harlin to charge upon settlement these amounts to the account of Weisser, and there is no pretence that Harlin was supposed to have authority to bind Weisser to that extent or in that manner.
But there was no settlement with the bank except such as resulted from the acquiescence of the plaintiffs’ intestate in the account by his silence. The examination of the account by Harlin was not a transaction with the bank, or in which they had any interest or of which they had any knowledge. It was a matter between Weisser and his clerk for the information of the former, and whether faithfully or honestly done is not material to the defendant. Weisser did not obtain the desired information, but is in no worse situation, and the defendant is in no better, than if no examination had been attempted, and in such case it would not have been claimed that he would have been concluded by the account and his omission to examine it. The business was, in truth, transacted in the usual and ordinary way, and no negligence can attach to Weisser in the premises. In The Manhattan Company v. Lydig (4 John., 377), a book-keeper in the bank, having charge of the ledger and whose business it was to copy entries from the teller’s cash-book, received money from a customer to deposit, entered the account in the ledger and afterwards in the dealer’s cash-book,' but embezzled the money. The bank-book of the dealer was balanced and settled three times, twice by the dishonest book-keeper and once by another clerk, after the credits had been entered .therein and before the fraud was discovered, although a critical examination of the books of the bank would have disclosed the fraud at any time. It was held that the bank was not liable, but that the depositor must suffer the loss, and that there was no want of diligence on the part of the bank. If a settlement with the defendant can be predicated upon the act of Harlin in examining the bank-book of Weisser, then the bank, in the case cited, should have been concluded by the acts of its clerks in stating the account *79 with its customers. Mere lapse of time in the abstract, however long, will not bar the right of the party to allege the forgery, provided he does it within a reasonable time after it is discovered. (Canal Bank v. Bank of Albany, 1 Hill, 287.) Lapse of time between the payment of the checks and the discovery of the forgeries is all there is upon which the defendant can rely in this action, and that cannot avail him as a defence to the action. I see no reason why the judgment of the supreme court at the trial term, for the full amount of the verdict, should not have been affirmed; and as the relinquishment of a part of the verdict by the plaintiffs, the whole of which they were entitled to retain, whether done upon their own motion or otherwise, cannot prejudice the defendant, the judgment below should -be affirmed.
Johnson, J.
The plaintiffs had a verdict on the trial for $1896.99. Upon the defendant’s appeal to the general term of the superior court, in which the suit was pending, a new trial was ordered unless the plaintiffs would consent that the damages should be reduced to $1885.50; upon such consent, a new trial was to be denied without costs of the appeal. The plaintiffs consented to the deduction, and a new trial was accordingly denied. The defendant has appealed to this court, and now insists that, as the general term decided that an error had been committed upon the trial, and the case was there upon a bill of exceptions, and the damages were assessed generally, the court were bound to grant a new trial absolutely. The record affords no means by which we could determine what grounds or what data were adopted by the court below in fixing the amount of the deduction to which the plaintiffs were required to consent to avoid a new trial; and we should probably feel compelled on this ground alone to order a new trial, had not the plaintiffs furnished a complete answer to the objection, by maintaining, as we think they have successfully maintained, that the ruling of the court below, at the trial, was correct. Weisser, the *80 plaintiffs’ intestate, had for a long period kept a bank account with the defendant. Between the 28th of January, 1838, and the time of his death, the 28th of August, 1849, he had deposited with the bank, to his own credit, and received credit for $296,601.86. During the same period, the bank had paid out, upon checks purporting to be signed by him, $295,451.36. Of these checks, which were several hundred in number, fifty-one, amounting in all to $589.20, were not signed by Weisser or by his procuration, but were forgeries of his name. If the case stopped here, the plaintiffs would clearly be entitled to recover the whole amount claimed. (Hall v. Fuller, 5 Barn. & Cress., 750.) It, however, further appears that, during the period above mentioned, Weisser’s bank-book was several times written up and balanced by the bank; that on each of those occasions all the checks which the bank had paid, as drawn by Weisser, were charged to him in his bank-book, and that all such checks, as well the forged chécks as the genuine, were returned with the balanced bank-book. All Weisser’s bank business was transacted by his clerk, one Harlin, who, on each of the occasions referred to, received the balanced bank-book and the returned checks from the bank. It likewise appeared that Weisser did not examine the returned checks and the statement of the accounts, as shown in the balanced bankbook, but directed Harlin to make such examination, and that attending to that part of Weisser’s business was in the course of Harlin’s regular employment. It appeared that twelve of the forged checks were paid to other banks, by which they were presented, and it did not appear to whom any of the other forged checks were paid. The forgeries were committed by Harlin, in whom Weisser reposed entire confidence. As soon as Weisser discovered that there was something wrong about his bank account, he communicated it to the bank, as he did also the fact that forgeries had been committed, as soon as he discovered them. Upon the discovery of the forgeries,' Harlin absconded, and the fifty-one *81 forged checks were found in his trunk at his rooms. None of them were entered in Weisser’s check-book, Upon this state of facts, the defendant insisted at the trial that Weisser, by neglecting to examine the checks and bank account upon the return of the bank-book, written up and balanced by the bank, had adopted the checks as his own, and that by reason of his negligence in that respect the plaintiffs could not recover from the bank the amount of the forged checks.
The plaintiffs’ case may be considered: First, as to those checks which were paid prior to the first balancing of the bank-book and return of checks; and, Secondly, as to the checks afterwards presented and paid. As to the first class of checks, the plaintiffs have shown the money of their intestate in the defendant’s hands; and the defendant, in discharge of that liability, wholly fails to show any order or authority of Weisser to make payment upon the checks in question. They were not instruments upon which, even if genuine, the bank could ever have maintained any action against Weisser. They did not, upon their face, import any obligation from Weisser to the bank. When they were returned to him they were not presented to him for payment, for they did not import any promise by him to pay, but as vouchers for payments already made and charged to Weisser in the bank-book. The entry of debits for payments made in a bank-book and striking a balance is undoubtedly a statement of the account, and the delivery of it to the dealer and his retention of it without objection, as in other cases of accounts rendered, gives to this statement of accounts the character of a stated account. But a stated account is liable to be opened by evidence of fraud or of mistake; and when the payments represented by the checks in question were sworn by Weisser’s representatives not to have been made to him or by his order or authority, the proof of payment afforded by the stated account was overthrown and Weisser’s right to the money remained unaffected. The second class of checks are subject to precisely the *82 same observations; and as to the amount claimed by the defendant on account of the payment of them, the defendant cannot retain it unless a right has accrued to the defendant from Weisser’s not having detected the forged checks returned upon the earlier balancings of his bankbook under the circumstances before stated. That these do not amount to a ratification of Harlin’s forging his name is plain, for there can, ordinarily, be no ratification of that of which a party is ignorant.' Ratification implies at least a knowledge that there is or may be something to ratify. The circumstances must then have effect, if they have any effect, upon the ground of negligence in a duty which he owed to the bank, whereby they have been misled and induced to pay the checks in question. The most which can reasonably be said is, that if Weisser had detected the forgeries and communicated the fact to the bank upon the return of the checks upon the first balance of his bankbook, the bank would have been stimulated to increased vigilance in the discharge of a duty which they owed, not to Weisser but to themselves, for it was not Weisser’s money which they-paid" out but their own. They were indebted to Weisser generally for money in their hands, and they could only discharge that indebtedness by payment to him or by his authority. The duty and the risk of ascertaining, when they were about to pay out money, that it was being paid upon competent authority, was upon them, just as in all other cases it is upon a debtor to see to it that he pays his creditor and not some one else without the creditor’s authority. Upon the mere ground of the forgery there was no more propriety in charging the money paid to Weisser than if anybody else’s name had been forged, or than if payments on some one else’s genuine checks had been charged to him.
The defendant’s proposition, when closely examined, is not that Weisser has done anything which facilitated or contributed to a fraud upon the bank, but that he has omitted *83 to do that which, if he had done it, would have enabled him to put them on their guard against frauds with which the connection of his name was only an accidental circumstance, to which no act of his had in any degree contributed, and against which he was under no peculiar obligation to guard them. Whatever loss the bank has sustained it has suffered from its own negligence or want of skill in a matter as to which, in the first instance, it and it only was bound to exercise skill and diligence. To this loss no act of Weisser has contributed. He was guilty of no bad faith. He has violated no duty which he owed to the bank and is in no way responsible. (Manhattan Company v. Lydig, 4 John., 377; Smith v. Mercer, 6 Taunt., 76; Young v. Grote, 4 Bing., 253; Johnson v. Windle, 3 Bing. N. C., 225; Bank of Commerce v. Union Bank, 3 Comst., 230; Canal Bank v. Bank of Albany, 1 Hill, 287.) He had a right to assume that the bank had discharged its own duty to itself (if indeed he was bound to make any assumption upon the subject), and was not bound to conceive it possible that the bank had charged him with money which had not been paid upon his order. He was under no contract with the bank to examine with diligence his returned checks and bankbook. In contemplation of law the book was balanced and the checks returned for his protection, not for theirs, and when he failed to examine it the whole consequence was that the burthen of proof was shifted. He became bound to show that the account was wrongly -stated. This right he preserved so long as his claim was not barred by the statute of limitations. The case completely negatives any imputation of participation by Weisser in the fraud perpetrated upon the bank. That would have introduced a new element into the case and would have led to a different result.
All the judges concurred.
Judgment affirmed.