By the Court.—Curtis, Ch. J.
The first question that conies before us for consideration, is one of fact. Were these thirty-seven checks which were paid by the bank, and alleged by the plaintiffs to be forgeries, such in reality or not ? There is a considerable conflict of testimony on this question. The officers of the bank and the expert called by them are confident in the belief that these thirty-seven checks are genuine, and consider them as such.
The plaintiff, who alone conducted the business of the firm in New York, positively denies that the checks were drawn by the firm, or authorized by it, and witnesses are introduced who point out differences between the signatures of the three checks, that were found of the number claimed to be forgeries, and those which - are conceded to be genuine. The plaintiffs claimed that the signatures on the spurious notes were traced by being placed over genuine signatures, and then slowly drawn; and that, when magnified by a lens, the indications of irregularity of outline, and of frequent stops in tracing the signatures, were distinctly visible.
Upon the evidence, the referee found for the plaintiffs, evidently giving it a careful consideration. He had the witnesses before him personally ; he' had the fullest opportunity of judging, where it was conflicting, as to who was best entitled to credit; and the conclusion he arrived at is supported by proofs, to such an extent, that it would be at variance with well-settled rules for this court, on appeal, to set aside his decision on this question of fact, as against the weight of evidence, or as unsustained by the proofs in the case. The checks being forgeries, there is of course'no reason for claiming that they were paid in pursuance of any authority from the plaintiff.
*457 The question as to which party should bear the loss, under circumstances analogous to those of the present case, has already been passed upon in the supreme court and in the court of ultimate resort. In Leavitt v. Stanton, (Supp. to Hill & D. 413), where the plaintiff was dn the habit of depositing money with the defendant and drawing on him, and the defendant paid a draft of $10,000 with plaintiff’s signature forged to it, the circumstances 'which would excuse the defendant from liability to respond to the plaintiff are considered by Nelson, Ch. J., in the opinion delivered by the court. The facts disclosed negligence and suspicion on the part of the plaintiff, when the draft was sold to the felon, but it was held that these facts fell short of gross carelessness, which should, at least, be established, if the principle on which the defendant sought to be exonerated could at all be entertained; and that they were insufficient to charge upon the plaintiff the consequences of the forgery that subsequently happened.
In the case now before us, the bank paid out its own 'money upon the forged checks, and not that of the plaintiffs, who were strangers to these acts of the bank and in no sense parties to them, or guilty of any gross negligence in respect to them. The bank, after it had thus parted with its own money, charges the sums so drawn out to the plaintiffs, in their account with the bank, who, upon notice, and without delay, refuse to ratify, or be bound by these acts of the bank.
In the case of Weisser v. Denison (10 N. Y. 68), the bank paid the checks that were forged by the depositor’s confidential clerk, charged them in the depositor’s pass-book, balanced and returned it to the clerk with the forged vouchers, who examined the account at the depositor’s request, and reported it correct. The depositor did not discover the forgeries until many months after, when he immediately notified the bank. *458 In the. action he brought to recover the balance of his deposit, it was held, that the bank could not retain the amount of the forged checks ; that it must be presumed to know the signatures of its dealers, and pay checks purporting to be drawn by them at its peril; that a depositor owes no duty to the .bank, that obliges him to examine his pass-book, or vouchers, with a view to the detection of forgeries of his name, and that the depositor was bound by the acts of his clerk, only so far as he was acting in the course of his employment.
In the case before us, the appellant urges that its position is very different from that of the defendant in Weisser v. Denison, supra, because in that case the checks were produced, and it was proved they were forged by the depositor’s clerk, who alone examined the pass-book and returned checks, and reported the result to his principal. In that case the forged checks were found in the trunk, of the absconding clerk ; in this case only a small part of them were found and that only after the clerk had absconded, but there ivas also evidence of erasures and alterations of the pass and check-books and of false readings of them by the clerk when they were compared with the account and examine'd by him and the plaintiff Frank together. I know of no principle of. law, that because only a portion of the checks claimed to be forged was found, the referee, or a j nry, is inhibited from finding, if there is evidence to warrant it, that the checks not found were also forgeries. If this view prevailed, it would only be necessary for the criminal who had obtained possession of the checks he forged, to destroy or secrete them, and thus secure immunity to the bank paying the forged checks, from any liability to the depositor. The referee, if the proofs made it apparent to him, that the thirty-seven checks in question were all forged, though only three of them could be presented before him, was in duty bound to so find.
*459 There was evidence afc the trial as to the existence and nature of alterations, erasures, and tracings in the check and pass books and the checks. An oculist,■ being shown a glass, testified that it was correct, and magnified four times. The plaintiffs offered the glass in evidence, and the defendant excepted to its admission.
When the testimony was closed, the counsel for the plaintiffs handed to the referee the magnifying glass thus offered in evidence, and requested him to inspect and examine with this glass the checks produced on the trial and read in evidence, for the purpose of determining whether the signatures to the three alleged forged checks were the genuine signatures of the plaintiffs, or were forged or traced signatures. The counsel for the defendant objected to this, and to the referee’s using the glass for that purpose; but the referee overruled the objection, and decided that he would use the glass for that purpose, and he did use the same for such purpose, and the defendant excepted to the decision of the referee, and to such use of the glass.
There was an opportunity to cross-examine as to the glass, and as to its capacity, if the defendant deemed it of any consequence, or had reason to suppose it incorrect. The referee occupied the position of a jury in determining the questions as to the alterations, erasures and tracings. The use of lenses that magnify, as auxiliary to the human vision, is so universally resorted to and adopted, as a necessary factor in obtaining precise mathematical results in the investigation of material objects, that the use of glasses, proved to be correct, in a judicial investigation, where the truth can very possibly only be arrived at by such use, does not seem reprehensible. The referee had the same right as a jury would have had, to look through glasses that magnify. It was proper for him to use the glass, if he could see better with it. It was his duty, in the interest of justice *460 as a referee, in a case where alterations, erasures and forgeries were claimed to exist, to resort to the usual and proper agencies, that correctly add to, or increase, the power and capacity of human vision, and consequently of human judgment, in respect to the issues of fact he was called on to decide.
The questions in this controversy have been very carefully and very clearly presented by the respective counsel; but after considering their arguments and briefs, and the evidence and the finding of fact by the referee, and the conclusions of law based upon decisions in cases/that appear to be corresponding in their character, and also' those of the defendant’s exceptions not discussed here, I am led to the conclusion that the judgment appealed from should be affirmed, with costs.
Freedman, J., concurred.